## Richmond *v.* Bennett, Appellant.

*Easement—Deed—Sheriff's deed—Omission.*

A sheriff's deed effects a transfer of an appurtenant easement even though express mention of the easement is not made in the deed.

*Easement—Mortgage—Sheriff's sale.*

Where after a mortgage has been executed an easement of a right of way is created in favor of the mortgaged land, a subsequent sheriff's sale of the land in foreclosure proceedings under the mortgage will pass the easement.

*Easement—Destruction of easement—Nonuser.*

In general, an easement created by express grant cannot be destroyed by anything short of a new grant of equal solemnity or adverse possession, constituting a prescriptive right. Nonuser will not terminate it.

*Equity—Jurisdiction—Practice, C. P.*

Where, on a bill in equity, the case has been referred to a referee by agreement of the parties, the defendant, after the testimony has been closed, cannot for the first time raise the question of the jurisdiction of equity.

*Equity—Jurisdiction—Real estate—Title—Evidence.*

Where in a proceeding in equity, the plaintiff's title is clear, and all the evidence relating to it is of such a character that a judge in a trial at law, upon the same evidence, would not be at liberty to submit the question of the plaintiff's title to the jury, equity will grant relief, although there has been no adjudication of the title at common law.

Argued Jan. 15, 1903. Appeal, No. 253, Jan. T., 1902, by defendant, from decree of C. P. No. 3, Philadelphia County, June T., 1892, No. 1183, on bill in equity in case of James Richmond v. Simon Bennett. Before MITCHLLL, DEAN, FELL, MESTREZAT and POTTER, JJ. Affirmed.

Bill in equity for an injunction.

From the record it appeared that plaintiff was owner of a lot on Fortieth street, in the city of Philadelphia, running back to a ten-feet strip of ground extending northward from Locust street to the property of defendant. Defendant, claiming that the ten-feet strip was a private way, the fee of which was in him, began the construction of a hay scale in the strip which would obstruct its use as a wagon way, whereupon

plaintiff claiming an easement of passage through the strip to Locust street, filed a bill for injunction. After finding in detail the above facts, and the respective consequences, etc., in the line of the titles of the parties, the learned referee, Charles E. Morgan, Jr., Esq., made the following findings of law:

The complainant in this suit seeks to enjoin the respondent, Bennett, from building a hay scale upon land adjoining said complainant's property and over which said complainant claims a right of way, granted as appurtenant to his lot by deed.

The respondent does not deny the act complained of, but defends his conduct on the ground that there exists no right of way over the land referred to; that he, the respondent, is the owner in fee of the soil thereof; and that in building the said structure, he is but exercising his proper rights as owner of the soil, and that the complainant has no rights therein for passage, or for any other purpose.

There has been no serious effort made by either party to establish an adverse possession or to set up a prescriptive right as opposed to the records of title and grants. The question therefore is one of real estate law, depending more on the interpretation of recorded deeds than on the conduct of the various holders of the titles, as testified to by the witnesses called.

That the right sought to be enforced by the complainant did at one time exist cannot be seriously doubted. Joshua Paxon, owning both the dominant and the servient tenement, sold his land in two portions, the one, now belonging to the respondent, being expressly subjected to a right of way in favor of the other, now owned by the complainant. As will appear from the deeds themselves, the conclusion is unavoidable, that this easement was created as appurtenant to the lot now owned by plaintiff. It was binding upon Paxon himself, and, by record notice upon his immediate successor, Grau.

It remains to inquire whether, by any means, the easement once existing, has since been extinguished. In general, an easement created by express grant cannot be destroyed by anything short of a new grant of equal solemnity or adverse possession constituting a prescriptive right. Nonuser, even if established, would not terminate it, and I have found that there is no evidence of a release and none showing adverse posses-

sion. That nonuser is immaterial is shown by McKee v. Perchment, 69 Pa. 342. There the subject of contention was an alley which was fenced through the middle and had stables, coal houses and other buildings upon it with trees and bushes, for a period of more than twenty-one years. It was held that as the right to the alley was conveyed by express grant and as the obstructions were not shown to have been accompanied by adverse possession, the easement must be sustained.

It was urged, however, that in the present case, there is a lack of continuity in the line of deeds transferring the easement to the present claimant. The contention is that, granting the previous existence of the right, it expired because it was omitted from a deed by which the sheriff transferred the dominant tenement. I am unable to see how this omission can affect the rights of the parties. There is nothing amounting to a release, for the owner of the servient tenement was not privy to these transactions, and was fully informed of the existence of the easement by the record in his own line of title. Moreover, the presumption is that where notice is given to the servient holder either by apparent use of the way, or upon the record, all rights created to assist in the enjoyment of the dominant land, become appurtenant thereto, and pass therewith even though not mentioned in the deed.

This rule is established by numerous authorities, among which may be mentioned the following cases : Swartz v. Swartz, 4 Pa. 353 ; Rhea v. Forsyth, 37 Pa. 503, 508 ; Ott v. Kreiter, 110 Pa. 370 ; Held v. McBride, 39 W. N. C. 284 ; Wright v. Chestnut Hill Iron Ore Co., 45 Pa. 475 ; Erb v. Brown, 69 Pa. 216.

Especially is it true that an omission from a sheriff's deed is not fatal. A sheriff's sale operates to transfer the mortgagor's title such as it is, not merely such as it is described to be. In Kieffer v. Imhoff, 26 Pa. 438, it is said: "The omission to specify the privilege particularly does not change the qualities annexed to the estates, nor do the other trifling inaccuracies produce that effect. Precision of description is never expected in a sheriff's deed, and it is always construed with great liberality." See also Buckholder v. Sigler, 7 W. &. S. 154, Wright v. Chestnut Hill Iron Ore Co., 45 Pa. 475, Middleton v. Middleton, 106 Pa. 252, Overdeer v. Updegraff, 69

Pa. 110, Zell v. Universalist Society, 119 Pa. 390, and Geible v. Smith, 146 Pa. 276.

I am of opinion, accordingly, that the said sheriff's deed effected a transfer of an appurtenant easement even without express mention of it.

It is true that the mortgage to satisfy which this sheriff's sale took place was prior in time to the creation of the easement. It is settled, however, by Cannon v. Boyd, 73 Pa. 179, where the facts were very similar to those in the present case, that the easement passes notwithstanding the priority of the mortgage.

Both parties have inquired at some length into the nature of the respondent's title to the soil of the alley. This question it is unnecessary to consider. The most perfect title to the soil would not relieve the respondent from his duty to respect the plaintiff's right of way thereover. The important fact in this case in the line of title is that the existence of the servitude was on record, in Paxon's deed to Grau. Binding Grau, it also bound the subsequent purchaser at the sheriff's sale, and constituted a sufficient notice to all claiming under him, including the respondent.

Therefore I report a right of way appurtenant to the complainant's lot was created with due regularity, and notice thereof placed on record, for all purchasers of the servient tenement. This easement was never released. It was never overridden by any prescriptive right. Nor did it expire merely because it was not mentioned in one of the deeds through which the complainant obtains his title. Of the respondent's title, it is enough that the record show full notice to him that he bought subject to the easement.

After the testimony had closed, and during the argument, the respondent contended for the first time that the bill should be dismissed for want of jurisdiction, although this question had not been set up by demurrer, or suggested in the answer. Under the decisions of the Supreme Court it should not now be considered.

The following language taken from the opinion in Shillito v. Shillito, 160 Pa. 167, is in point: "Moreover, the jurisdiction of the court was not denied or questioned by demurrer, plea or answer. The first intimation of a want of jurisdiction came

after the most of the testimony had been taken by a master ap-
pointed on the agreement of the parties, and after the most of
the expenses of the litigation had been incurred. We have
therefore a case to which the language of this court in Adams's
Appeal, 113 Pa. 449, is applicable, even if it be conceded that
there is room for doubt respecting jurisdiction. In delivering
the opinion of the court in the case cited, the present Chief
Justice GREEN said : ' While it is true that manifest want of
jurisdiction may be taken advantage of at any stage of the
cause, the court will not permit an objection to its jurisdiction
to prevail in doubtful cases after the parties have voluntarily
proceeded to a hearing on the merits, but will administer suit-
able relief.' "    See also Evans v. Goodwin, 132 Pa. 136, Sea-
right v. Carlisle Deposit Bank, 162 Pa. 504, Drake v. Lacoe,
157 Pa. 17, Edgett v. Douglass, 144 Pa. 95, and Margarge &
Green Co. v. Ziegler, 9 Pa. Superior Ct. 438.

But even if the objection to the jurisdiction of equity be con-
sidered at this stage of the proceeding, it is not at all clear that
the plaintiff is not entitled to equitable relief. It is true that
in actions respecting real property, where the plaintiff's right
has not been established at law or is not clear, he is generally
not entitled to remedy by injunction ; but where in a proceed-
ing in equity, the plaintiff's title is clear, and all the evidence
relating to it is of such a character that a judge in a trial at
law, upon the same evidence, would not be at liberty to submit
the question of the plaintiff's title to the jury, equity will grant
relief although there has been no adjudication of the title at
common law :   Edgett v. Douglass, 144 Pa. 95; Manbeck v.
Jones, 190 Pa. 171.

In Manbeck v. Jones, a bill in equity was filed for an injunc-
tion to restrain the closing up of an alleged road across de-
fendant's land.   The answer denied the existence of the road.
Although the question of the existence of the right of way had
not been tried in an action at law, the court below heard testi-
mony on both sides and decided that the defendant took his
conveyances subject to the right of way.

Judge BECHTEL, delivering the opinion of the court below,
cites authorities to the effect that the right should be clear to
warrant a decree and injunction to compel the keeping open of
a way, and if the right be doubtful a chancellor will pause un-

til it be established by law. He then says: "Of course the
right should be clear and no chancellor would interfere in a
doubtful case until it is established, but when the right is
clearly shown, as in this case, a suit at law is unnecessary and
really a useless expense. . . . We think if the testimony be-
fore us was submitted to a jury, there could be but one finding,
to wit: in favor of the existence of the road; nor could any
other be conscientiously sustained."

The court entered a decree ordering that the road be opened
and restraining any further obstruction of plaintiff's right of
way.

The decree was affirmed by the Supreme Court, which held:

"For reasons given by the learned trial judge in his opinion,
we are satisfied he was right in concluding that the plaintiff
was entitled to equitable relief, and in adequately providing
therefor by the terms of the decree from which this appeal was
taken."

For the reasons given, I report in favor of the complainant,
and respectfully recommend that a decree be entered in accord-
ance with the prayer of the bill, in the form herewith submit-
ted and attached.

On exception to his report, the referee further found as fol-
lows:

In reply specially to the complainant's twenty-fourth excep-
tion in which the error assigned is my finding as a matter of
law that the servitude imposed upon respondent's land was not
discharged by the sheriff's sale for taxes of 1887, I refer to
the cases of Irwin v. Bank of United States, 1 Pa. 349, and
Lesley v. Morris, 9 Phila. 110, not cited in my original re-
port.

In the latter of these cases it is held that a building restric-
tion upon real estate is not removed by a subsequent judicial
sales for taxes. On page 111, Judge THAYER, in delivering
the opinion of the court, says: "It would be a very dangerous
doctrine to establish, that a covenantee who is not a party to
the proceedings for the collection of the taxes, and who had
no notice of their existence, should, without any fault of his,
be deprived of a valuable right—a right which is as much
property as the land itself. Such a doctrine would furnish a
very easy method by which covenantors and their assigns

might evade the most solemn obligations, and fraudulently rid themselves of troublesome servitudes for which they have received a large price. Such a construction of the laws relating to the collection of taxes does not appear to be necessary in order to secure the payment of the tax, and would produce a manifest injustice without any important advantage to the state or the city. This then is precisely the case in which the argument from inconvenience is decisive of the construction. The words of the various acts of assembly relating to the levying and collection of taxes have no such necessary meaning or effect as that which the argument for the plaintiff attributes to them, and this being so, the great inconvenience which would result from the construction which he contends for supplies a powerful reason for believing that such a construction was never contemplated by the legislature, and fully warrants us in rejecting it. The decisions and the general current of legislation upon this subject tend greatly to strengthen this conclusion. That a ground rent was not divested by a judicial sale for taxes assessed upon the land was settled by the courts before the passage of the act which expressly so enacts : Irwin v. Bank of United States, 1 Pa. 349; Salter v. Reed, 15 Pa. 260. The legislation which protects mortgages which are prior to tax claims is also a clear indication of the policy of the state upon the subject. The right which is acquired by the covenantee and his assigns in a building restriction, such as that which exists in that of the line of his title, is a right not in the land, but appurtenant to the land. Like a ground rent, it is an interest not in the land itself, but incident to the ownership of another, and arising out of a covenant fastened upon it by a former owner. The same reasoning and the same policy which protects a ground rent from being divested by the sale of the land for taxes, ought therefore to protect the right which a covenantee and his assigns have in a building restriction."

Exceptions to the referee's report were dismissed by the court.

*Errors assigned* were in dismissing exceptions to referee's report.

*William S. Divine,* with him *Arthur B. Huey,* for appellant.

*A. I. Phillips,* with him *Dimner Beeber* and *J. Levering Jones,* for appellee.

PER CURIAM, May 4, 1903:

This decree is affirmed on the findings of law by the learned referee, costs to be paid by appellant.