## Hunter, Appellant, *v.* McKlveen, Prothonotary, et al.

Argued September 25, 1945. Before MAXEY, C. J., DREW, LINN, STERN, PATTERSON, STEARNE and JONES, JJ.

*Calvin E. Pollins,* with him *John W. Pollins* and *Pollins & Pollins,* for appellant.

*Charles C. Crowell,* with him *Dan V. Crowell, David Blair, Everett S. Sorber* and *Crowell & Whitehead,* for appellees.

OPINION BY MR. JUSTICE DREW, January 11, 1946:

William Hunter, plaintiff and appellant, a resident taxpayer of Westmoreland County, filed this taxpayer's bill in equity, and after preliminary objections thereto, filed by some of the defendants, had been sustained refusing the prayer and dismissing the bill, and the decree nisi had been made absolute, he took this appeal. De-

fendants, the appellees, are James S. Blair et al. The Prothonotary and County Commissioners of Westmoreland County were also joined as defendants. Since the issues to be decided arose out of the sustaining of the preliminary objections, the facts alleged in the bill must be taken to be true. The bill therefore constitutes a complete history of the facts of the case. In resumé, and as far as possible in chronological order, the facts are:

On October 10, 1938, the Pennsylvania Turnpike Commission, created by an Act of Assembly of May 21, 1937, P. L. 774, and authorized therein to condemn lands for highway purposes, appropriated certain lands in Westmoreland County, being a part of a tract of 6889 acres of which James S. Blair et al., hereinafter referred to as the Blairs, claimed to be the owners. In a viewers' proceeding the Turnpike Commission named the Blairs as the owners of the land. During April, May, June, July and August, 1939, the Turnpike Commission entered and improved the land taken as a right of way. The lands were unseated and had been sold to the County Commissioners at various times for delinquent taxes, the last sale being on June 13, 1938.

Following an appeal from the award of the Board of Viewers the Turnpike Commission filed a petition and obtained a rule on the County Commissioners of Westmoreland County to show cause why they should not intervene by reason of tax sales of said lands to them. The Commissioners filed a disclaimer in which they said they disclaimed ". . . all title or claim of title or of right to or interest in or possession of the premises described in the Petition and Statement of Claim . . . and to every part thereof, now or at any time heretofore, and we do likewise disclaim any interest or property in the damages caused by reason of the condemnation of all or of any part of the said premises by the said Pennsylvania Turnpike Commission." The Commission then made a motion for judgment on the record on the ground that the Blairs had no interest in the land and that the

title was in the County. This motion was overruled, the decree leaving the question of ownership open to be disposed of at the trial of the issue.

On February 5, 1942, the Blairs paid all the delinquent taxes on the lands involved. On May 2, 1944, a jury was sworn and a compromise or special verdict agreed to in the sum of $16,400.00, and providing "the same to be paid into Court in full of all damages for property taken, damaged or destroyed of the above named plaintiffs, owners or reputed owners, or *by whomsoever owned*". (Italics added).

On June 23, 1944, appellant filed this taxpayer's bill alleging these facts and particularly that on October 10, 1938, the date of the appropriation, said lands were not owned by the Blairs but were owned by the County of Westmoreland by reason of five Treasurer's Sales to the County Commissioners for taxes on said land, which sales occurred on June 11, 1934, and June 13, 1938, and that the land had not been redeemed at the time of the appropriation by the Turnpike Commission or within the statutory period of two years after the last tax sale, and averring that the County of Westmoreland was entitled to the fund paid into court, pursuant to said verdict, rather than the Blairs.

Appellees' first objection to the bill is that equity has no jurisdiction to consider it. A court of equity generally will not take jurisdiction to try title to real property: *Harris v. Brewster, Perkin's Appeal*, 154 Pa. 22, 25 A. 829; *Butler County Commrs'. Petition*, 141 Pa. Superior Ct. 597, 15 A. 2d 504. However, where the right is clear and there is no serious dispute as to any of the material facts, equity will assume jurisdiction in such a case: *Piro v. Shipley*, 211 Pa. 36, 60 A. 325; *Richmond v. Bennett*, 205 Pa. 470, 55 A. 17; *Manbeck v. Jones*, 190 Pa. 171, 42 A. 536. In the case at bar there is no dispute as to any material fact, only a difference of opinion as to whether the lands were redeemed, the application of redemption acts and a question of the validity of the disclaimer. In *Richmond v. Bennett*, supra (p. 474), this

Court said: "It is true that in actions respecting real property, where the plaintiff's right has not been established at law or is not clear, he is generally not entitled to remedy by injunction; but where in a proceeding in equity the plaintiff's title is clear, and all the evidence relating to it is of such a character that a judge in a trial at law, upon the same evidence, would not be at liberty to submit the question of the plaintiff's title to the jury, equity will grant relief although there has been no adjudication of the title at common law." In this case the owner of the lands after the tax sales and at the time of the condemnation is determined by public records. There can be no question of the tax sales and the purchases by the County Commissioners. There could be no submission of the question of title to a jury. In a trial at law the court would be bound to give binding instructions in favor of the County.

It should also be remembered that in order to oust equity jurisdiction there must be a legal remedy and one that is adequate and complete: *Fraser Fund v. Fraser,* 350 Pa. 553, 40 A. 2d 22; *York Rys. Co. v. Driscoll,* 331 Pa. 193, 200 A. 864. We agree with the learned court below that ". . . by reason of the special verdict it is necessary for a Court to determine who is to receive this fund of $16,400.00, now lying idle in the hands of the Prothonotary. Ejectment would not lie and the redemption of the land by payment of the delinquent taxes prevents proceedings under the validation acts. We are confronted with a situation where the law is deficient. There is no remedy at law and it would therefore appear that equity has jurisdiction."

At the time of the condemnation title was in the County by reason of the tax sales of June 11, 1934 and June 13, 1938. The right to redeem these lands existed thereafter for a period of two years as provided by the Act of May 9, 1889, P. L. 141. Since title passed conditionally to the County at the time of the tax sale, June 13, 1938, the owners had until June 13, 1940, to pay the

taxes and redeem the lands. At the time of the condemnation, October 10, 1938, the title passed conditionally from the County to the Turnpike Commission, and became absolute at the expiration of the statutory period of redemption. It was not until February 3, 1942, that the taxes were paid and an attempt made to redeem the property. It was then too late to do so, it was long after the period of redemption fixed in the statute had expired. The money received for the lands from the Turnpike Commission was therefore the property of Westmoreland County, from which source the title to the Turnpike Commission was directly derived. The Blairs lost all interest in the lands when they did not redeem within the statutory period, and for the same reason they never had any claim or right to the condemnation money.

The owner of the land at the time of the condemnation is the person entitled to the resulting damages: *Smith v. Commonwealth,* 351 Pa. 68, 40 A. 2d 383; *Green v. Pittsburgh,* 311 Pa. 132, 166 A. 586. In *Kaufman v. Pittsburgh,* 248 Pa. 41, 46, 93 A. 779, we said: "The right to such damages [arising from an appropriation by a city of land for a street] is personal, belonging to the owners of the land when the entry and injury takes place, and the damages do not run with the land nor pass by a subsequent conveyance of it although not specifically reserved." It was therefore the County and not the Blairs who was entitled to the condemnation damages.

The Turnpike Commission attempted to interplead the County in the condemnation proceedings. We do not see how it could have done more to establish the legal title. The County Commissioners, however, filed a disclaimer. This was a mistake of law and fact. The Commissioners had no power to deny the title of the County. County officers hold property purchased at tax sales as trustees for the benefit of all tax levying authorities: *Andrews Land Corp's Appeal,* 149 Pa. Superior Ct. 212, 27 A. 2d 700. "It is true that county commissioners are

the agents, trustees and managers of the county and its
financial affairs. They act in a fiduciary capacity ... .":
*Commonwealth v. Krickbaum,* 199 Pa. 351, 355, 49 A. 68.
They cannot give away its property unless authorized by
law or for adequate consideration. As said in McQuillin
Municipal Corporations, 2d Ed., Rev. Vol. 3, §1248:
". . . a municipality cannot give away its property or
expend money for purposes other than corporate ones,
and it follows that a municipality has no power in any
manner to dispose of property of the corporation with-
out consideration, where not for a corporate purpose."

It has been argued that since the County and the
Turnpike Commission are both public agents of the Com-
monwealth, the one cannot claim from the other con-
demnation damages. It is settled law in this State that
the Commonwealth can take property from one munici-
pality and give it to another without compensation to the
former: *Pa. Tpk. Comm. Land Condemnation Case,* 347
Pa. 643, 32 A. 2d 910; *Chester Co. Institution District v.
Commonwealth,* 341 Pa. 49, 17 A. 2d 212; *Poor District
Case (No. 2),* 329 Pa. 410, 196 A. 837. However, the Com-
monwealth as sovereign, can make its own terms and re-
quire the payment of damages if it so desires. "The state
. . . may take without compensation such property, hold
it itself, or vest it in other agencies, expand or contract
the territorial area . . . repeal the charter and destroy
the corporation. All this may be done *conditionally or
unconditionally,* with or without the consent of the citi-
zens, or even against their protest. In all these respects
the state is supreme, and its legislative body, conforming
its action to the state constitution, may do as it will, un-
restrained by any provision of the Constitution of the
United States.": *Hunter v. Pittsburgh,* 207 U. S. 161,
178. (Italics added).

The Pennsylvania Turnpike Act, supra, authorizes
the Turnpike Commission to compensate municipalities
for land taken from them in the construction of the high-
way. The first sentence of Section 6 of the Act reads as

follows: "Whenever a reasonable price cannot be agreed upon, . . . the commission is hereby authorized and empowered to acquire by condemnation any such . . . lands, rights, easements, franchises and other property deemed necessary or convenient for the construction or the efficient operation of the turnpike in the manner hereinafter provided."

And the last paragraph of Section 6 reads: "All counties, cities, boroughs, townships and other political subdivisions and municipalities, and all public agencies and commissions of the Commonwealth of Pennsylvania, notwithstanding any contrary provision of law, are hereby authorized and empowered to lease, lend, grant or convey to the commission, upon its request, upon such terms and conditions as the proper authorities of such counties, cities, boroughs, townships, political subdivisions or other municipalities may deem reasonable and fair, and without the necessity for any advertisement, order of court or other action or formality other than the regular and formal action of the authorities concerned; any real property which may be necessary or convenient to the effectuation of the authorized purposes of the commission, including real property devoted to public use".

In construing this section it is clear that the legislature gave the municipalities the right to compensation for land taken away from them by the Turnpike Commission. Since municipalities are thus authorized and empowered to ". . . lease, lend, grant or convey to the Commission . . . upon such terms and conditions . . . as . . . municipalities may deem reasonable and fair", it follows that where the parties cannot agree on value, condemnation must result, because that is the only legal way to determine value when the parties cannot agree. If this were not true the Turnpike Commission by refusing to agree could prevent all municipalities from getting any damages for land taken from them. In the instant case the County claimed no damages because the

County Commissioners were under the mistaken impres-·
sion that the County had no title or interest in the land
in question.

It seems to be agreed by all that the amount of the
compromise verdict, paid into court, $16,400.00, is fair
and reasonable compensation for the property appro-
priated. On the record before us this fund is the prop-
erty of the County of Westmoreland for which reason
the decree entered below is reversed, and the case is
remitted under Equity Rule 49 for an Answer if such
can be made.

Decree reversed, bill of complaint reinstated, and
case remitted for further proceedings consistent with
this opinion. Costs to be paid by the County of West-
moreland.

CONCURRING OPINION BY MR. JUSTICE JONES:

It is my understanding that the order of reversal en-
tered in this case is predicated upon the conclusion that,
under the facts disclosed by the bill of complaint which
necessarily must be taken as true on the preliminary ob-
jections filed by the defendants, the proceeds of the con-
demnation belong to the County, the record owner of the
title to the land involved at the time of the taking. With
that, I am compelled to agree. It is the logical conclusion
to be drawn from the facts so established.

However, I do not understand that the decision pre-
cludes the former owners of the property, who later re-
deemed what remained after the condemnation, from
showing what acreage was adversely taken from the
County by the Turnpike Commission's condemnation,
how much remained for redemption after the condemna-
tion, whether any of the property so taken lay in Somer-
set County or any other facts that might be material in
establishing an equitable right in the former owners to
the fund from the condemnation as representing the land
which the County, through no voluntary sale of its own,

was unable to redeliver to the former owners upon their exercise of their right to redeem.