## Lycoming County Commissioners' Petition

2

*Richard Henry Klein* and *Marshall R. Anspach*, county solicitor, for petitioners.

*McCormick, Herdic & Furst*, for respondent.

*Michael J. Maggio*, for Pine Township Supervisors.

*H. Swank Phillips* and *Malcolm Muir*, for Donald E. Fisher.

LARRABEE, P. J., WILLIAMS, J., October 21, 1947.— This matter comes before the court upon a petition by the Commissioners of Lycoming County, asking for the approval by the court of the sale of certain mineral rights in lands located in Pine Township, Lycoming County, Pa., to Donald E. Fisher, for the sum of $17,000, and for a rule on Harriet Horton Stanton to show cause why the proposed sale should not be approved.

A rule was issued upon Harriet Horton Stanton, who claims she is a party entitled to redeem these said mineral rights under the Act of July 28, 1941, P. L. 535, and also entitled to the royalties collected by the county commissioners on coal mined by Donald E. Fisher on said mineral rights, to show cause why the proposed sale of mineral rights by the county commissioners should not be approved. An answer was filed by her to which a replication was duly filed by the Commissioners of Lycoming County, and the supervisors and school board of said Pine Township.

Several hearings were had at which considerable testimony was adduced. Requests for findings of fact and conclusions of law were filed by both petitioner and respondent.

From the testimony adduced at these hearings we make the following

### Findings of fact

1. On September 21, 1926, the Treasurer of Lycoming County sold the mineral rights in a tract of unseated land in Pine Township, Lycoming County, Pa., containing 990 acres, in Hewes & Fisher Warrant No. 1636, assessed to Davidge and Company to the Commissioners of Lycoming County, for the sum of $513.86, representing unpaid school, poor and road taxes assessed thereon for the years 1924 and 1925, plus costs. On December 6, 1934, a deed for these mineral rights from the county treasurer to the County Commissioners of Lycoming County was recorded in Deed Book 292, page 416, in the office of the Recorder of Deeds and Mortgages in and for Lycoming County, Pa. These mineral rights were never redeemed within two years of said sale.

2. December 31, 1930, the Treasurer of Lycoming County sold the mineral rights in a tract of unseated land in Pine Township, Lycoming County, Pa., containing 990 acres, in Hewes & Fisher Warrant No. 1632, to the Commissioners of Lycoming County, for the sum of $796, representing unpaid county, school, road and poor taxes assessed thereon for the years 1928 and 1929, plus costs. On February 21, 1931, a deed for these mineral rights from the county treasurer to the Commissioners of Lycoming County was recorded in Deed Book 281, page 297, in the office of the Recorder of Deeds and Mortgages in and for Lycoming County, Pa. These mineral rights were not redeemed within two years of said sale.

3. In the fall of 1934, after the two-year primary redemption period had expired on the mineral rights in Warrants 1632 and 1636, Donald E. Fisher of Williamsport, Pa., entered into negotiations with the Commissioners of Lycoming County for the right to mine coal on the mineral rights in said warrants, and, as a result of these negotiations, made an oral contract with the said county commissioners, giving him the right to mine all the coal in the said mineral rights to exhaustion, paying the county commissioners a royalty of 25 cents a ton for all coal mined, and guaranteeing a minimum tonnage of 10,000 tons a year. It was part of said contract that Fisher was to make all improvements, put in roads, shafts, cribbing and anything pertaining to the operation. This contract was orally sanctioned by the president judge of the Court of Common Pleas of Lycoming County, who is since deceased.

4. Pursuant to said oral contract, Donald E. Fisher proceeded with his mining operations of the mineral rights and began to operate on January 1, 1935, and paid royalties thereon to the Commissioners of Lycoming County continuously to the present time. During that time Fisher's possession has been continuous, notorious, and exclusive. He has also made valuable improvements thereon of approximately the value of $90,000. During the period from January 1, 1935, to date Fisher has paid royalty at the rate of 25 cents a ton for each ton of coal removed from these mineral rights. During the said period of time Fisher has mined coal only from the mineral rights in Tract 1632, and he has never mined or removed any coal as yet from the mineral rights in Tract 1636.

5. During the period from January 1, 1935, to December 31, 1945, the total royalties paid by Fisher to the Commissioners of Lycoming County, under the said arrangement with the county commissioners, was $33,087.23. This sum of money is segregated and held

by the Commissioners of Lycoming County in a trustee fund account in the treasurer's office.

6. The total taxes, with penalties and interest, charged against the mineral rights in warrant 1632, computing interest to November 1, 1945, and including costs, were $11,450.14.

7. The total taxes, with penalties and interest, charged against the mineral rights in warrant 1636, computing interest to November 1, 1945, and including costs, were $7,830.55.

8. None of the moneys which were received by the Commissioners of Lycoming County for royalties from Fisher have been credited to the taxes charged against the said mineral rights.

9. After negotiations with the Commissioners of Lycoming County, Donald E. Fisher, by letter dated August 28, 1945, offered to purchase the interest of the county in the mineral rights in the said two warrants for the sum of $17,000. On January 22, 1946, Fisher gave the Commissioners of Lycoming County his certified check for $1,500 to apply on the purchase price of $17,000, previously offered by him. On January 22, 1946, the Commissioners of Lycoming County, by resolution adopted the same day, accepted this certified check of $1,500, subject to the approval of the court, and instructed their solicitor to prepare a petition to the court for approval of the said sale.

10. The Commissioners of Lycoming County, the Supervisors of Pine Township and the School District of Pine Township, all of whom were represented at the hearings in the proceedings, are agreed that the said offer of $17,000 by Donald E. Fisher is a fair and reasonable price for the said mineral rights, and that it would be to the best interests of all the taxing authorities involved that the sale should be consummated.

11. On November 20, 1945, Harriet Horton Stanton, of Great Neck, Long Island, New York, through her

counsel, by letter addressed to the Commissioners of Lycoming County, requested the right to redeem said mineral rights pursuant to the Act of July 28, 1941, P. L. 535.

12. In open court, at the hearing on April 17, 1946, counsel for Harriet Horton Stanton, acting for herself and other parties in interest, tendered to the Commissioners of Lycoming County the sum of $4,000 in legal tender, the same representing the first installment of taxes due on said mineral rights, under the Act of July 28, 1941, P. L. 535, and demanded a written agreement for redemption of the said mineral rights by installment payments under the Act of July 28, 1941, P. L. 535, and also demanded the surrender of the royalties in question, which tender and demand were refused by counsel for the county commissioners in open court.

13. On June 8, 1908, the Treasurer of Lycoming County sold to Calvin H. McCauley, Jr., the mineral rights in the said two warrants, numbered 1632 and 1636 in Pine Township, for unpaid taxes for the years 1906 and 1907, plus costs. Separate deeds for each of said two warrants were executed, acknowledged and delivered by the county treasurer to Calvin H. McCauley, Jr., on September 17, 1908, and a record of the making of these deeds is duly entered in the office of the Prothonotary of Lycoming County, in Sheriff's Deed Book "K" at page 264, although said deeds are not copied or recited in said entries. No redemption of the said mineral rights in either of the said warrants from the said sale was made down to the trial of this case.

14. These two county treasurer's deeds show that the title to these mineral rights was taken by Calvin H. McCauley, Jr., in his individual name only and not as a trustee, attorney, agent, or in any other representative or fiduciary capacity whatsoever.

15. Sometime after September 25, 1945, a member of the Davidge family found an unrecorded declaration of trust for said mineral rights among their papers and informed Harriet Horton Stanton to that effect.

16. This declaration of trust covered the mineral rights in Warrants 1632 and 1636 aforesaid, and was dated September 18, 1908, by Calvin H. McCauley, Jr., with his wife, Florence M. McCauley, joining, and was acknowledged September 21, 1908, before a notary public in Lycoming County. Said declaration of trust recited that Calvin H. McCauley, Jr., had purchased the said mineral rights in said warrants at a treasurer's sale June 8, 1908, and that the purchase price had been paid, and he thereby declared that the true owners of the said mineral rights were the following persons in the following proportions:

| | |
|---|---|
| Samuel P. Davidge | 8/24ths |
| Estate of Charles S. Horton, Deceased | 7/24ths |
| Sherwood B. Davidge | 3/24ths |
| Estate of James Davidge, Deceased | 3/24ths |
| Estate of John B. Davidge, Deceased | 3/24ths |

17. This declaration of trust further recited that these mineral rights "will continue to be held by Calvin H. McCauley, Jr., for the said beneficiaries named therein and their heirs and assigns" and McCauley and his wife further covenanted for themselves, their heirs, executors, administrators and assigns that at the request of said beneficiaries, their heirs and assigns they, the said McCauley and wife, would make and deliver to them a special warranty deed for all the rights, title, interest and estate in "said minerals acquired by McCauley under said tax sales".

18. Harriet Horton Stanton was the daughter of Charles S. Horton, who died a resident of Williamsport, Pa., on December 4, 1907, leaving a last will and testament, which was duly admitted to probate before the Register of Wills of Lycoming County, and she was

one of the devisees under said last will and testament. Calvin H. McCauley, Jr., died in the year 1922.

19. The failure of any person, including Harriet Horton Stanton, as the holder or holders of the unseated lands in which said mineral rights are situate, to give the statement to the Commissioners of Lycoming County, containing a description of the tract or tracts of land so held, the name of the person or persons to whom the original title from the Commonwealth passed, and the nature, number and date of such original title, and the date of conveyance to such holder, signed by such holder or his or her or their agent, as required by the Act of March 28, 1806, P. L. 644, and subsequent acts of assembly, has been a continuing default from September 21, 1909 (one year after the acknowledgment of the declaration of trust) to April 17, 1946, the date when the declaration of trust was first produced, and the commissioners given notice of the same by having it offered in evidence at the hearing. The said default was not discovered by the Commissioners of Lycoming County until April 17, 1946, and the commissioners were never given any notice of said declaration of trust prior to this time.

20. That the said purchase price of $17,000 is a fair and reasonable price for said mineral rights and is a higher price than would be realized for the same at public sale.

21. That Harriet Horton Stanton, by deed dated September 10, 1945, conveyed all of her interest in and to the mineral rights in said Warrants 1632 and 1636 to Grace A. Stryker of Williamsport, Pa., as agent for W. Clyde Harer; the said Grace A. Stryker by deed dated September 25, 1945, conveyed all of her interest in said mineral rights to Walter L. Rhine; the said Walter L. Rhine conveyed his interest in said mineral rights back to Harriet Horton Stanton. That Walter L. Rhine was acting as a straw party for W. Clyde Harer. That said interest in the said mineral rights

is now in those taking under the last will and testament of Charles S. Horton, deceased.

22. On February 7, 1947, counsel for Harriet Horton Stanton, respondent, suggested of record that she died a resident of Great Neck, Nassau County, New York, on September 11, 1946, and a copy of her last will and testament was duly probated before the Register of Wills in and for Lycoming County on October 14, 1946, and ancilliary letters testamentary were duly issued the same day unto Lindley B. Stanton and Sumner Horton Waters, who are now substituted on this record as respondents in place of Harriet Horton Stanton.

### Discussion

Three of the chief questions before us for determination are:

First, the ownership of the royalties received by the county commissioners from Fisher for coal mined under these mineral rights.

Second, does Harriet Horton Stanton have the right to redeem such mineral rights.

Third, if Harriet Horton Stanton is entitled to redeem said mineral rights is she liable to pay a fourfold tax thereon under the provisions of section 1 of the Act of March 28, 1806 P. L. 644 (72 PS §5487) as amended by The General County Assessment Law of May 22, 1933, P. L. 853, sec. 409 and The Fourth to Eighth Class County Assessment Law of May 21, 1943, P. L. 571, sec. 606?

As to the rightful ownership of the amount of royalties paid to the county commissioners by Fisher for coal mined under said mineral rights, during the period from January 1, 1935, to December 31, 1945, and which royalties amount to the sum of $33,087.23, we are of the opinion these royalties are the property of Lycoming County for distribution among the several taxing districts entitled to share therein.

It is undisputed that these royalties were collected from Fisher under an agreement entered into between the Commissioners of Lycoming County and Fisher in the year 1934, and that they represent royalties on coal mined by Fisher in Warrant No. 1632 only. It appears from the testimony Fisher has never mined any coal on Warrant 1636.

From the record it is undisputed that the mineral rights on Warrant 1632 were sold by the county treasurer to the Commissioners of Lycoming County at a tax sale held on December 31, 1930, and on February 21, 1931, a deed to the county commissioners for these mineral rights was recorded in the office of the Recorder of Deeds and Mortgages in Lycoming County, in Deed Book 281, page 297, and no offer to redeem these rights was made until the last hearing in this case and that was only to make a partial redemption by offering to pay the first instalment of back taxes under the Act of July 28, 1941.

It is undisputed that the contract made between the Commissioners of Lycoming County and Donald E. Fisher was entered into in the fall of 1934, which was after the two-year primary redemption period had expired on these mineral rights. Therefore, at the time the agreement was entered into with Fisher, the County of Lycoming, through its county commissioners, thus held an absolute title to these mineral rights. After this two-year period passed without redemption no person had a right to redeem the mineral rights in question, unless by agreement with the commissioners, until the Act of July 28, 1941, P. L. 535, went into effect. It is obvious therefore that the royalties derived from the coal mined by Fisher, after the two-year primary redemption period had expired, was after the last former owner had ceased to have any right of property in said mineral rights save only the right of redemption, which right did not come into existence until 1941.

Section 1 of the Act of July 28, 1941, P. L. 535, provides as follows:

"In all cases where heretofore or hereafter real property shall have been or shall be purchased at any tax sale by any political subdivision, any person who was or is entitled under existing law to redeem such property shall have such right of redemption so long as the title thereto remains in said political subdivision upon the payment of the amount due thereon by installments in the manner hereinafter provided, whether or not the period during which the right of redemption existed shall have expired."

Harriet Horton Stanton contended if she redeems these mineral rights she would be entitled to these royalties that have been paid to the Commissioners of Lycoming County by Fisher.

We are of the opinion this question is ruled by the decision in Hunter v. McKlveen et al., 353 Pa. 357. In that case it appears that certain unseated lands located in Westmoreland County had belonged to the Blair family, that the land was sold by the County Treasurer of Westmoreland County for unpaid taxes on June 11, 1934, and June 13, 1938, respectively, and was purchased by the Commissioners of Westmoreland County at these tax sales. The land was not redeemed by the last former owners, to wit, the members of the Blair family, within the two-year primary redemption periods respectively, the last of which periods expired on June 12, 1940. In fact the land was not redeemed by the Blairs until February 3, 1942, which was more than two years after the most recent tax sale. In the meantime the Pennsylvania Turnpike Commission condemned a portion of this land, which condemnation and appropriation was after the most recent of these tax sales.

In February 1942 the Blairs paid all the delinquent taxes on the land involved and on May 2, 1944, the amount of damages arising from the condemnation

proceedings was paid into court and a verdict awarding said condemnation damages recited, inter alia, that it was in full of all damages for property taken "of the owners or reputed owners, or by whomsoever owned".

The Blairs made claim to this money received from condemnation proceedings and the County of Westmoreland contested the claim averring that as the land had not been redeemed at the time of the appropriation by the Pennsylvania Turnpike Commission, or before the statutory period of two years after the last tax sale, the county was therefore entitled to the fund paid into court and not the Blairs.

The Supreme Court, in an opinion by Mr. Justice Drew, declared (p. 361):

"At the time of the condemnation title was in the County by reason of the tax sales of June 11, 1934 and June 13, 1938. The right to redeem these lands existed thereafter for a period of two years as provided by the Act of May 9, 1889, P. L. 141. Since title passed conditionally to the County at the time of the tax sale, June 13, 1938, the owners had until June 13, 1940, to pay the taxes and redeem the land. At the time of the condemnation, October 10, 1938, the title passed conditionally from the County to the Turnpike Commission, and became absolute at the expiration of the statutory period of redemption. It was not until February 3, 1942 that the taxes were paid and an attempt made to redeem the property. It was then too late to do so, it was long after the period of redemption fixed in the statute had expired. The money received for the lands from the Turnpike Commission was therefore the property of Westmoreland County, from which source the title to the Turnpike Commission was directly derived. The Blairs lost all interest in the lands when they did not redeem within the statutory period, and for the same reason they never had any claim or right to the condemnation money.

"The owner of the land at the time of the condemnation is the person entitled to the resulting damages."

In this opinion, when the court stated it was too late to redeem, it is obvious it was referring to that portion of the land which had been condemned by the Turnpike Commission.

This rule was also applied in Moeller v. Washington County et al., 352 Pa. 640. In that case it appeared the County Treasurer of Washington County on August 22, 1940, sold a brewery containing certain machinery and fixtures to the County of Washington for unpaid taxes. The property was not redeemed within the two-year primary redemption period. On October 15, 1942, the court of said county confirmed a private sale of the machinery and equipment of the brewery and thereafter the purchaser removed the brewing machinery and fixtures. The Supreme Court decided that inasmuch as the primary redemption period of two years fixed by the Act of 1889 (72 PS §6113) had expired, that the county could pass a good title to the machinery after that time, and the county was not liable in trespass for selling the brewing machinery and equipment, nor was it liable for the proceeds derived from said sale.

It was decided that this same principle governed in a leading case tried in the Federal courts, to wit, Lovell et al. v. Dulac Cypress Co., 117 F. (2d) 1, decided in 1941. In that case it appears the State of Louisiana purchased timber land owned by Lovell for unpaid taxes in 1895. The State then permitted the Dulac Cypress Co. to cut timber from this land. In 1912 an act of assembly was passed permitting the owner or his heirs to redeem property so long as the title thereto remained in the State. Plaintiffs, as heirs of Lovell, owner of the property at the time of said sale to the State in 1895, redeemed the lands in 1938, and brought suit in the Federal court against the Dulac Cypress Co. for damages for the timber cut by defendant during the ownership of said land by the State. It was decided that plaintiffs were not entitled to recover damages.

The United States District Court for the Eastern District of Louisiana declared that (p. 922) :

"Since the state had absolute title to the property before plaintiffs exercised their right of redemption, the plaintiffs cannot recover damages for the timber removed during the period in which ownership was in the state." (Lovell et al. v. Dulac Cypress Co., 31 F. Supp. 919.)

An appeal was taken to the Circuit Court of Appeals for the Fifth Circuit, and that court held, inter alia:

"The statutes provide that until the state has sold the property it may be redeemed. The statute and the decisions under it make it clear; that after the primary year had passed and before actual redemption, the state is absolute owner of, and can do what it will with the property; and that until redemption, the redemptioner has no right or title whatever in it."

Continuing the opinion in that case:

"The owner then in retaking the property (by redemption), except for subrogation to the state's lien for the taxes of 1894, retook it not as it was in 1895, (at the time of tax sale) but as it was in 1938, (at the time of redemption.)"

It further appears in that case that the Supreme Court of the United States denied a certiorari and also a rehearing.

In the instant case we are of the opinion the status of the coal removed under said mineral rights from said tracts by Fisher and upon which royalties were paid to the county is analogous to that of the facts in the above-cited cases of Hunter v. McKlveen, Moeller v. Washington County, and Lovell v. Dulac Cypress Co.

In view of these authorities we conclude that the sum of $33,087.23, received by the County of Lycoming as royalties on the coal mined under said mineral rights by Fisher, after the primary redemption period of two years had elapsed from the date of said county treasurer's sale to the county, rightfully belongs to Lycom-

ing County to be properly distributed among the taxing districts entitled thereto.

As to the question of the right of Harriet Horton Stanton to redeem these mineral rights by reason of being an heir of one of the beneficiaries named in the declaration of trust executed by Calvin McCauley, Jr., on September 28, 1908, but which was never recorded nor brought to the attention of the taxing authorities of Lycoming County until the hearing held in this case in 1946, we are of the opinion that despite the long period elapsing from the time said declaration was executed and until its contents were made known to Harriet Horton Stanton, it still remains a valid declaration of trust and enforcible by a beneficiary or lawful heir of a beneficiary and carrying with it the right to redeem.

From the testimony before us it appears that this declaration of trust, acknowledged by Calvin McCauley, Jr., on September 28, 1908, and its provisions, were unknown to Harriet Horton Stanton until it was accidentally discovered among the papers of the Davidge Estate, while this litigation was pending, in the year 1946. There is no testimony to show that Harriet Horton Stanton or the other beneficiaries under the said declaration of trust, and now living, had knowledge that such a declaration was in existence, although it seems most incredible that some of the beneficiaries expressly named in said declaration of trust, and living at the time it was executed, or the personal representatives of those then deceased, would not have known that it had been made. However, we must rely solely upon the testimony before us and there is nothing to show that Harriet Horton Stanton had any knowledge of the existence of this declaration of trust prior to the year 1946.

It is undisputed Harriet Horton Stanton is a lawful heir and devisee of her father, Charles Horton, who died in 1907. It might appear that due to the great

lapse of time that intervened since this declaration was acknowledge on September 28, 1908, down to the year 1946, when it was discovered among the papers of one of the beneficiaries, that the beneficiaries under said trust were guilty of laches in not having presented their claim for an interest in these mineral rights long before the time of the trial of this case begun in 1946.

The law, however, appears to be well established that no laches in respect to failure of a beneficiary to assert a trust of which he has no knowledge, or of which he is not chargeable with knowledge, will deprive him of his interest in the trust property or bar him from enforcing the trust.

In A. L. I. Restatement of the Law of Trusts, vol. 1, pp. 629 and 630, in commenting on the effect of laches in terminating a trust, it states:

"Although the beneficiary may be barred by laches from holding the trustee liable for breach of trust, he does not lose his interest in the trust property merely because of the lapse of time, however great."

From the Restatement it would also appear that if the trustee repudiated the trust and the beneficiary fails to bring suit within a reasonable time after that, then the beneficiary may be barred by laches from enforcing the trust.

To the same effect is 54 Am. Jur., 449, §581, where it is stated:

"No laches exists in respect of failure to assert a resulting trust of which a beneficiary has no knowledge or of which he is not chargeable with knowledge."

And:

"No laches exists until a reasonable time after a beneficiary is notified of a breach or other cause of suit against a trustee." (See Haney v. Legg, 129 Ala. 619, 30 So. 34, 87 Am. St. Rep. 81.)

As to the right to redeem by anyone who has an interest in lands, it is stated in 51 Am. Jur., 959, §1106, that

"The right or privilege of redemption from a tax sale is ordinarily granted to and may be exercised by the former owner of the forfeited land, and his successors in interest, or any other person who has a legal or equitable interest in the land. In this respect, as in other respects, the redemption statutes are liberally construed in favor of the right of redemption. The right is not personal to the owner at the time of the tax sale; while it is not an estate in land, it is a statutory privilege which passes to the heir of the owner in the same manner as the land itself. The law treats the right of redemption as an interest which the owner may convey or devise and which will pass to his heirs in case of death intestate."

In 51 Am. Jur., 954, §1097, it is stated:

"The courts have repeatedly reiterated that tax redemption statutes are to be construed liberally in favor of the redemptioner and the exercise of his right of redemption. (Citing case.) On the other hand, while there are some statements to the effect that a right of redemption may at times be implied when not expressly given, it must be borne in mind that the right of redemption, however favorably regarded, is nevertheless a statutory right exclusively, which can be claimed only under the circumstances and by compliance with the conditions prescribed in the statute."

In the instant case it is obvious that we are not dealing with an alleged breach of trust by a trustee or any adverse action between the beneficiary and trustee, but the sole question before us is whether a beneficiary who never knew of the declaration of trust, under which she claims to derive an interest, has the right to assert such an interest and to redeem even though she never disclosed such interest to the taxing authorities of Lycoming County.

No authorities were cited by counsel and the court, after an exhaustive investigation, did not find any cases holding, that under similar circumstances, a ben-

eficiary having an equitable interest under a declaration of trust is thereby barred from enforcing her rights under the trust by reason of such an unusually long period of time elapsing before making her claim.

It was stated in Roth's Appeal, 159 Pa. Superior Ct. 145 at p. 152:

"Our courts have always liberally construed the privilege of redemption under the various acts regulating tax sales. Philadelphia v. Schaefer et al., 269 Pa. 550."

Therefore, we are of the opinion that Harriet Horton Stanton, as a beneficiary under said declaration of trust, has the right to redeem said mineral rights.

As to the question of whether a fourfold tax may be imposed on these mineral rights if Harriet Horton Stanton redeems said rights, the Commissioners of Lycoming County contend that under the Act of March 28, 1806, and later acts which reënacted the same provisions of the Act of 1806, it is mandatory on the county commissioners, if Harriet Horton Stanton redeems said mineral rights, to charge four times the amount of the unpaid taxes due at the time the redemption takes place, on these two mineral rights.

According to the testimony before us the unpaid taxes due on Warrant 1632 as of November 1, 1945, were $11,450.14, and the amount due on Warrant 1636 as of November 1, 1945, was $7,830.55.

It has been the statute law in Pennsylvania since 1805 that the holder of unseated land must, within one year from the time he becomes a holder of the title, notify the county commissioners of that fact and also furnish them with a description of the land, name of the warrantee owner, the nature of the property and the date of the original patent, plus the date of the deed and the name of the present holder, as well as the name of the grantor therein. Failure to do this subjects the land to a penalty of four times the amount

of the taxes to which the land would otherwise have been liable.

The Act of March 28, 1806 (72 PS §5487) reënacted the former Act of April 4, 1805, P. L. 234, and expressly provided that where default is made in giving such notice by the land owner the commissioners are to assess on such land four times the amount of the taxes to which said tract or tracts of land would have been otherwise liable, and to enforce the collection thereof in the same manner as taxes due on unseated lands are or may be assessed and collected.

In Williston v. Colkett, 9 Pa. 38 (1848) the court held that an owner of unseated land who fails to give this notice must suffer the consequence of his silence.

And in Morton v. Harris, 9 Watts, 319 (1840) the court declared (p. 326):

"The Act of 1806 directs the owners of unseated land, under the penalty of a four fold tax, to make a return to the commissioners of each and every tract held by them, and the name of the person to whom the original title from the commonwealth passed."

In Hubley v. Keyser, 2 P. & W. 496 (1831), the Supreme Court said (p. 501):

"The commissioners always decide how much tax is to be levied during the current year, and apportion it on the real and personal property according to the valuation; the whole process may perhaps be called the assessment of the tax; and each ought to perform the part appropriated to him or them by law, in order to make a regular assessment of a tax. But there is at least one case in which the commissioners may, *nay, are commanded to impose a four fold tax* on lands never valued by the assessor; and of the existence of which the assessor had no knowledge. See Act of 20th of March, 1806, §1." (Italics supplied.)

It is undisputed, in the instant case, that this declaration of trust, made by Calvin H. McCauley, Jr., although it was acknowledged, was never recorded and

the notice required under the provisions of the Act of 1806 and the subsequent acts relating thereto was never given by Calvin H. McCauley, Jr., Mrs. Stanton, or by any record holder as the law requires. There was no testimony whatever that such notice was given to the county commissioners by anyone, and by the general law the burden is thereby placed on the person required to give notice to prove that such notice was given. See Otto v. Western Saving Fund Society, 343 Pa. 615, Floyd v. Lumber Co., 222 Pa. 257, O'Neil v. Metropolitan Life Insurance Co., 345 Pa. 232.

The burden is not on the county commissioners to search out and investigate and learn who the owner of the taxable property is. They may rely solely on the record. See Meyers v. Rental Income Corp., 101 Pa. Superior Ct. 438.

In this last cited case it appears defendant who was a record owner of the land and actually held the legal title for the benefit of another contended he could not be held for these taxes if he were not the actual owner. The Superior Court in holding defendant as the recorded and registered owner of the land primarily liable for the payment of taxes said (p. 441) :

"It was unnecessary for the plaintiff to make any further investigation before bringing this suit than examining the record. He had the right to rely on that high source of information, as he had no notice to the contrary."

The Act of March 28, 1806, supra, was reënacted in The County Assessment Law of May 22, 1933, P. L. 853, sec. 409. The Fourth to Eighth Class County Assessment Law of May 21, 1943, P. L. 571, repealed the Act of May 22, 1933, supra, as to those counties, but in section 606 we find reënacted the language of the Acts of 1806 and 1933, supra, and from this we conclude that the statutory law relating to the imposing of a fourfold tax remains the same down to this date.

Section 606 of The Fourth to Eighth Class County Assessment Law of 1943 (72 PS, §5453-101) provides as follows:

"It shall be the duty of every person hereafter becoming a holder of unseated lands by gift, grant or other conveyance, to furnish to the board a statement . . . within one year from and after such conveyance, and on failure . . . it shall be the duty of the board to assess on every tract of land . . . when discovered, four times the amount of the tax."

It is clearly evident from reading these acts that the tax is imposed on the land itself and is not a personal tax.

It is claimed that Harriet Horton Stanton had an equitable interest in and became the holder of these mineral rights situated on unseated lands, to wit, Warrants 1632 and 1636, in 1908 when the declaration of trust was signed by Calvin McCauley, Jr., and clearly the Act of 1806, supra, was then in force; therefore within one year after said declaration of trust was executed, to wit, in 1909, no notice having been given to the county commissioners as required by the Act of 1806 and the later acts, it became mandatory on the county commissioners from that time henceforth to assess the land in question with fourfold tax. It is admitted this discovery as to the ownership of Mrs. Stanton in said land was not made until this case came on for trial in 1946, at which time she made a tender in open court of one fifth of the taxes due, under the tax installment Act of 1941. A redemption does not take place until the whole amount of taxes due are paid. See Erie Appeal, 159 Pa. Superior Ct. 18 (1946).

It is obvious from the record of the testimony before us that the default in failing to give notice to the county commissioners as required by the Act of 1806, occurred in the year 1909, one year after the declaration of trust was executed by McCauley, and the fact that it was not discovered until 1946 that Mrs. Stanton, as a bene-

ficiary in the trust, had an equitable interest in this land, nevertheless, does not alter the fact that this default in failure to give required notice occurred in 1909, which, of course, was prior to the Act of 1933. Therefore the Act of 1933 could not affect the status of the matter which was fixed in the year 1909.

A reading of the statutes shows the duty is clearly mandatory on the part of the county commissioners to impose a fourfold penalty tax on land whose owner has failed to give the required notice under the Act of 1806 and subsequent acts reënact the same provision.

As to the oral contract entered into by the county commissioners with Donald E. Fisher, whereby he was given the right to mine coal on these mineral rights, subject to the payment of a fixed royalty to the county commissioners, we find there was no specific statute empowering the county commissioners to grant such permission to Fisher. However, we are of the opinion the commissioners had the general power to make such a contract in the absence of specific statutory authority.

In the County of McKean v. Young, Commissioners, 11 Pa. Superior Ct. 481, the Superior Court said (p. 489):

"A county is a quasi corporation, and its corporate powers are to be exercised by the Commissioners: Kittanning Academy v. Brown, 41 Pa. 269; Act of April 15, 1834, P. L. 537, secs. 3, 4. Except on a few points, the powers of the commissioner are not expressly or directly defined by statute. But, as public agents of the county, exercising its corporate powers, their authority must necessarily be commensurate with the scope of their duties in the premises: Van Kirk v. Clark, 16 S. & R. 286."

And in Lane v. McDowell, 25 D. & C. 296, it was said by Judge Copeland of Westmoreland County (p. 303):

"If the Legislature intended that the counties should make only such contracts as may be necessary for carrying into execution the legislation or statutory law relating to counties, it doubtless would have so said, but

the laws relating to counties are to be found not only in the statutes but also in the common law of the State as that common law is to be found in the reported cases. This is evident from the words of Judge Smith, in County of McKean v. Young, Commr., supra: 'except on a few points, the powers of the commissioners are not expressly or directly defined by statute'."

In the County of Allegheny v. The Western Pennsylvania Hospital, 48 Pa. 123, the Supreme Court said (p. 126):

"A defect of statutory authority might be pleaded in such cases as in this, but it should be remembered that all the powers and duties of county commissioners are not defined by statutes."

And in the recent decision in Zerbe Township School District et al. v. Thomas et al., 353 Pa. 162, the Supreme Court said (p. 169):

"The County held the lands which the Commissioners had purchased at the County Treasurer's sales as Trustee for the benefit of all the taxing authorities concerned."

To the same effect is Erie Appeal, 159 Pa. Superior Ct. 18.

Therefore in making this oral contract with Fisher the county commissioners were acting in their business or proprietary capacity, and in doing so were acting for the benefit of the taxpayers of Lycoming County. As trustees of said mineral rights for the benefit of the several taxing districts' interests it was the duty of the commissioners to make them productive. The oral agreement entered into was made in the exercise of a legal right on the part of the county commissioners and they had the inherent power and authority by virtue of their office, acting as such trustee, to enter into such an agreement. We therefore hold that if Harriet Horton Stanton redeems these rights she redeems them subject to this oral contract which had been entered

into by the county commissioners with Donald E. Fisher.

We conclude that if Harriet Horton Stanton redeems said mineral rights she takes them in the condition they are in as of the date she redeems them, and not as of the date when the said rights were sold at county treasurer's sale to the County Commissioners of Lycoming County. In 61 C. J. 1302, §1819, it is said "A tax purchaser is not accountable for rents and profits . . . after his title becomes absolute on the expiration of the period of redemption." Other leading cases on this subject are those of Lovell v. Dulac Cypress Co., 117 F. (2d) 1 (1941), 314 U. S. 672; Hunter v. McKlveen, 353 Pa. 357, and Moeller v. Washington County, 352 Pa. 640.

Although from the testimony we feel that the offer of $17,000 for the remaining interest of the commissioners in said mineral rights is a full and fair price, nevertheless we conclude that in view of the right of Harriet Horton Stanton to redeem said rights the court must refuse the prayer of the petition presented by the county commissioners.

### Conclusions of law

1. The County of Lycoming had an absolute title to said mineral rights after the two-year primary redemption period expired and there had been no redemption.

2. The county commissioners in the year 1934 made a valid and binding contract with Fisher for mining coal in said mineral rights. The commissioners had an implied power to make such contract acting in their proprietary capacity.

3. The royalties received by the county commissioners from Donald E. Fisher in the amount of $33,086.23 for the period from January 1, 1935, to December 31, 1945, belong to the County of Lycoming for distribution among the taxing districts entitled thereto.

4. The Commissioners of Lycoming County shall assess a fourfold tax on said mineral rights for each and every year taxes thereon remained due and unpaid.

5. The personal representatives of Harriet Horton Stanton have the right to redeem said mineral rights as she was a beneficiary under the declaration of trust executed and acknowledged by Calvin H. McCauley, Jr., in September of 1908.

6. At the time Harriet Horton Stanton made a tender in open court and offered to redeem said mineral rights, she had the right to redeem as a beneficiary under the declaration of trust executed and acknowledged by Calvin H. McCauley, Jr., in September 1908.

7. Any mineral rights so redeemed shall be taken by the person or persons redeeming the same in the condition the rights are in at the time of such redemption, and not as of the date when said rights were sold to the county commissioners.

8. If the personal representatives of Harriet Horton Stanton complete said redemption they shall take the mineral rights subject to the oral contract between the commissioners and Donald E. Fisher, entered into in the fall of 1934.

## Order

And now, October 21, 1947, in view of the foregoing opinion and authorities cited the court refuses the prayer of the petition presented by the Commissioners of Lycoming County, asking for approval of a sale to Donald E. Fisher of the coal remaining in said mineral rights for the sum of $17,000. The costs of these proceedings to be paid by Lycoming County. Rule discharged.

EDITOR'S NOTE.—No appeal was taken from the foregoing order, but after the time therefor had expired, the representatives of Harriet Horton Stanton, deceased, waived their redemption rights.