# Caldwell *versus* Coates *et al.*, Garnishees.

1. Under the Act of June 13th 1836 (Execution Attachment), where the plea of the garnishees is " *Nulla bona,*" the burden is on the plaintiff to show what goods, &c., were in the hands of the garnishees.

2. A manufacturing firm being much indebted, assigned their personal property about their factory to three of their creditors, put them into possession of the factory to conduct their business, and from the proceeds pay the debts of these creditors and other liabilities and pay the balance to the assignors. This imposed on the assignees only a liability to account ; in an attachment against the assignors—the assignees being garnishees—the burden was on the plaintiff to show that the garnishees had assets in their hands liable to the attachment.

3. The plaintiff was bound to make out a case of indebtedness sufficient to recover in assumpsit.

January 8th 1875. Before AGNEW, C. J., SHARSWOOD, WILLIAMS, MERCUR, GORDON, PAXSON and WOODWARD, JJ.

Error to the District Court of *Philadelphia:* Of January Term 1873, No. 153.

This was an attachment-execution, issued November 26th 1864, by John D. Caldwell against Paul Klotz and James Armstrong, trading under the firm name of Paul Klotz, in which Benjamin Coates and George M. Coates, trading as Coates Brothers, were garnishees.

[Caldwell *v.* Coates.]

The garnishees pleaded "*Nulla bona.*"

The plaintiff, on the 26th of November 1864, recovered a judgment for $293.32 on which this attachment-execution was issued.

The circumstances under which the plaintiff claimed that the liability of the garnishees arose, were the following:—

In May 1864, the indebtedness of the firm of Paul Klotz, manufacturers at Glen Bank Mills, to *all* their creditors was something over $100,000. Of this sum $22,229 were due to Coates Brothers; $15,893.45 to Bullock's Sons, and $13,877.07 to Seth B. Stitt. On the 30th of May 1864, the firm of Paul Klotz entered into an agreement with their above-named creditors, reciting their indebtedness to them and that the firm was unable then to pay them, but desired to secure them; and by the agreement assigned, &c., to those creditors all their stock of wool and materials used in the manufactory, their tools and implements, machinery, &c., with all their personal property, as collateral security for the debts due to the assignees, the assignees to have an inventory of this property made, and have the stock worked up and sold, the proceeds to be appropriated first to the payment of expenses, then to pay the debts due the assignees, and the balance to be paid to the firm of Paul Klotz; the assignees to have the use of Glen Bank Mills for the purpose of manufacturing for four months, they to pay out of the sales the interest on mortgages on the premises and the taxes. On the 4th of June 1864, Klotz and Armstrong executed to the same three creditors two mortgages on their real estate, machinery, &c., each for $100,000; one to secure the before-mentioned indebtedness, and the other to secure future advances, &c. On the same day another agreement was entered into between the same parties; it recited the agreement of May 30th 1864, to which it was to be a supplement, the mortgage to secure the indebtedness; the understanding was that the mortgagees should take possession of the real estate under the mortgage, and continue the business until the indebtedness should be paid; it recited also the second mortgage for advances, this mortgage to be recorded immediately after the first mortgage, so as to constitute a second lien; it was then agreed that the agreement of May 30th should remain in full force until its object was accomplished; that the assignees should have the additional right to continue the business, to make advances on account of the business, to purchase and sell machinery, wool and other materials, to employ operatives, sell goods, and out of the proceeds reimburse themselves for their expenses, to replace stock and machinery, and apply the proceeds to the extinguishment of the debts due the same creditors, and to reimburse them any sums they might expend in purchasing the debts of the firm, until the money advanced and expended and the amounts owing should be discharged, and the balance, if any, then to be paid over to the firm; also that Klotz and Armstrong

[*Caldwell v. Coates.*]

had transferred in mortgage all their personal property, &c., belonging to and in and about Glen Bank Mills, and any property which might thereafter be purchased by the mortgagees in the course of the business, to hold as collateral security for existing indebtedness to the mortgagees, then for the sums they might pay out in the purchase of debts of the firm or advances or liabilities incurred in carrying on the business; also, that nothing in the agreement was to compel the mortgagees to continue the business longer than they deemed advisable, nor to deprive them of their right to sell under the mortgages all the real and personal property whenever they should deem it expedient. There were also other stipulations not necessary to be specified.

On the 29th of September 1864, another agreement was made between Bullock's Sons and Seth B. Stitt of the first part, Coates Brothers of the second part and the firm of Paul Klotz of the third part; it recited the agreement of May 30th, the first mortgage, and that Bullock's Sons, Stitt and Coates Brothers had taken possession of the real estate, in pursuance of the agreement of June 4th, and carried on the business; it recited, also, the second mortgage and that Bullocks and Stitt had sold their claims against the firm of Paul Klotz to Coates Brothers; it was then agreed that in consideration of sums equal to their claims, they respectively assigned to Coates Brothers their right to the personal property of the firm of Paul Klotz in and about Glen Bank Mills, with the powers, rights and privileges, by virtue of the agreement of June 4th, the firm of Paul Klotz agreeing to the transfer, &c., it being understood that Coates Brothers were to stand to the firm of Paul Klotz as Bullocks Sons and Stitt did, &c.

The case was tried January 22d 1872 before Thayer, J.

On the trial it appeared by the evidence for the plaintiff that Bullocks Sons, Stitt and Coates Brothers, took possession of the assigned property, and that the personal property was worth $30,000, that Coates Brothers and the other assignees held possession of the assigned property nearly a year, and that no part of the personal property was ever returned to the firm of Paul Klotz, but that the mill was surrendered to them; that no account was rendered to the firm of Paul Klotz; that the three assignees were fully paid and the mortgages were " satisfied " of record.

The garnishees offered no evidence.

The court instructed the jury that the burden of proof was upon the plaintiff; that to entitle him to recover he must show that the assigned property had produced more than sufficient to pay the claims of the garnishee; that if the plaintiff had not satisfied the jury by his evidence that a balance was due from the garnishee, the verdict should be for the garnishees. If Klotz and Armstrong were suing these garnishees in a suit at law to recover a balance alleged to be due them, they would be obliged to show it. The

[*Caldwell v. Coates.*]

burden of proof would be upon them to show that the business resulted in a sum in excess of the indebtedness for which the business was assigned to the creditors.

The verdict was for the garnishees.

The plaintiff took a writ of error; he assigned the charge of the court for error.

*W. R. Wister* and *C. S. Pancoast* (with whom was *G. W. Dedrick*), for plaintiff in error.—Under the Act of June 16th 1836, sect. 32 *et seq.*, Pamph. L. 767, 1 Br. Purd. 639, pl. 29, *et seq.*, an attachment will lie against property in the hands of an assignee under a void assignment : Stewart *v.* McMinn, 5 W. & S. 103; Wharton *v.* Grant, 5 Barr 39: Mitchell *v.* Stiles, 1 Harris 307; against losses on insurance : Insurance Co. *v.* Field, 9 Wright 129 ; income payable by a trustee: Park *v.* Matthews, 12 Casey 28 ; Girard Trust Co. *v.* Chambers, 10 Wright 485 ; money in the hands of an attorney : Riley *v.* Hirst, 2 Barr 346.    In an action of account, a formal judgment *quod computet* is not necessary : McLean *v.* Wade, 3 P. F. Smith 151 ; McFadden *v.* Erwin, 2 Wharton 40.    The burden was on the garnishees to account: Shriver *v.* Nimick, 5 Wright 91; Bredin *v.* Kingland, 4 Watts 420.    The plaintiff in an attachment is in the shoes of the debtor : Fessler *v.* Ellis, 4 Wright 248 ; Patten *v.* Wilson, 10 Casey 299 ; Strong *v.* Bass, 11 Id. 333.

*S. Dickson* (with whom was *J. C. Bullitt* and *J. B. Townsend*), for defendants in error.—The burden was on the plaintiff to make out this case: Reeside *v.* Reeside, 13 Wright 322.    "Debt," in the Act of 1836, does not extend to an unsettled balance : Knerr *v.* Hoffman, 15 P. F. Smith 126.    The sum being unliquidated, an attachment will not lie: Carland *v.* Cunningham, 1 Wright 228 ; Girard Ins. Co. *v.* Field, 9 Id. 129.

Judgment was entered in the Supreme Court, January 18th 1875,

PER CURIAM.—Clearly the burden of proof under the plea of *nulla bona* is on the plaintiff to show what goods, credits or moneys are in the hands of the garnishee to answer his attachment.    The 58th section of the Act of 13th June 1836 makes it the duty of the jury to find what goods or effects, if any, were in the hands of the garnishee, and also the value thereof.    A liability to render an account is a very different thing from a liability for the payment of money.    On the settlement of the account it may turn out that nothing is due or coming to the plaintiff.

The case before us exhibited only a liability to render an account.    There was no evidence of an actual settlement, or a statement of an amount, or of a balance due or owing by the

garnishees. It is true that a large amount of property was shown to have gone into their hands, much greater than sufficient to pay the plaintiff's claim. But the evidence also shows that this property went rightfully into their hands upon certain terms of agreement which gave the garnishees a right to retain the property and its avails until their claims and those of others were paid. In the performance of the duties enjoined by these agreements large expenses and outlays were to be necessarily incurred, and therefore the value of the property and the amounts of the claims it was taken to pay could not alone solve the question of balance. A settlement of an account was essential to determine the question whether any balance remained in the hands of the garnishees. Clearly it was the duty of the plaintiff to make out a case of indebtedness at least sufficient to enable him to recover in an action of assumpsit. Judgment affirmed.