Tremont Township School District Appeal.

Argued May 26, 1950; reargued November 22, 1950. Before DREW, C. J., STEARNE, JONES, BELL and LADNER, JJ.

*Charles L. Frank*, with him *Henry Houck*, for appellants.

*Calvin J. Friedberg*, with him *James J. Gallagher*, *Roy P. Hicks* and *Hicks, Williamson & Friedberg*, for Tax Claim Bureau, appellee.

*Earl G. Harrison*, with him *Wm. A. Schnader*, *Ralph M. Bashore*, *Edgar Downey*, *Bashore & Bashore* and *Schnader, Harrison, Segal & Lewis*, for Hickory Contracting Company et al., appellees.

*Robert L. Kunzig*, Deputy Attorney General, with him *Charles J. Margiotti*, Attorney General, for Commonwealth.

OPINION BY MR. JUSTICE JONES, January 2, 1951:

The Tax Claim Bureau of Schuylkill County, by petitions filed in separate proceedings, sought approval of the court below of two proposed private sales of lands formerly owned by the Western Anthracite Coal Company. The Commissioners of the County had acquired the properties described in the petitions in 1942 and 1944 at County Treasurer's sales for unpaid taxes wherein ten different taxing bodies had participating interests, viz., the County of Schuylkill, Schuylkill County Institution District, and the Township and School District, respectively, of each of the four following Townships of the County: Tremont, Frailey, Hegins and Porter. The petitions were filed under the provisions of Section 702(h) of the Real Estate Tax Sale Law of July 7, 1947, P. L. 1368, 72 PS § 5860.-702.[1] That Act became effective by its terms (see Sec. 803) on January 1, 1948, and is applicable to Schuylkill County, the Commissioners of the County not having adopted a resolution during the month of January 1948 electing not to accept the provisions of the Act: see Sec. 102. The lands covered by the one petition were located in Tremont Township while in the other petition they were located in Frailey, Hegins and Porter Townships and in each instance consisted of both seated and unseated lands. Hearings were had before the court below on both petitions, together, with notice to the various interested taxing districts except that, through error in the tax records, notice was not

---

[1] Simulating the procedure prescribed by Section 613(b) of the Real Estate Tax Sale Law of 1947 for the private sale of properties not sold at public sale *by the Tax Claim Bureau* for want of a sufficient bid, the Bureau disapproved the offers to purchase at private sale in the present instances and, upon the written instructions of the Commissioners of the County, an interested taxing district, submitted its petition for the proposed sales to the Court of Common Pleas of the County for approval.

originally given Frailey Township School District. However, counsel for that district appeared generally in the proceedings and participated throughout in behalf of the district. Accordingly, the learned hearing judge held Frailey Township School District to be party to the proceedings; and, as one of the present appellants, the Frailey district makes no complaint of the court's jurisdiction on the score of lack of notice to it. Following the hearings which were continued from time to time over a period of five months, the court below filed an opinion and order approving the sales and directing that they be consummated. Pursuant thereto, the sales were effectuated, and the purchase prices were paid and, thereafter, distributed to the taxing districts according to their proportional interests therein. Subsequently, Tremont Township School District and Frailey Township School District brought these separate appeals which have been reargued with notice to the Attorney General of the Commonwealth who disclaimed any occasion for participation by the Commonwealth.

The principal question raised by the appellants is whether a Tax Claim Bureau, under the Real Estate Tax Sale Law of 1947, may sell at private sale, without a prior offer at public sale at an upset price, real estate acquired by the County Commissioners at a tax sale prior to January 1, 1948, and duly turned over to the Tax Claim Bureau, i.e., prior to January 1, 1949: see Sec. 701. The appellants raise two subordinate questions, preliminarily, (1) as to whether the County Commissioners acquired the lands in question prior to January 1, 1948, and (2) if so, whether the properties were transferred to the Tax Claim Bureau by proper action of the County Commissioners. If all of these questions are answered in the affirmative, the appellants raise a still further question, of an administrative nature, as to whether the private sales of the various tracts

in bulk, rather than piecemeal, should have been approved.

The appellants' assertion that the County Commissioners had not acquired the lands in question prior to January 1, 1948, is based on their contention that the County's title to the property was not complete by virtue of the Treasurer's sales in 1942 and 1944 because the late owner had filed exceptions to the sales, which exceptions were not disposed of until July 11, 1949. On that date the exceptions to the 1942 sale were sustained by agreement of the parties and the exceptions to the 1944 sale were withdrawn by the exceptant and a decree of absolute confirmation was entered. The 1944 sale had, for some unexplained reason, resold the property which the 1942 sale had embraced. The sales had been held under the Act of May 29, 1931, P.L. 280, as amended, 72 PS §5971*l*. By Section 12 of that Act, it is only such exceptions as are sustained (and the court deems the defect not amendable) for which the court shall by order or decree "invalidate the sale." The effect of the ultimate decree of absolute confirmation was to confirm title to the property in the Commissioners as of the time of the return of the 1944 sale and its confirmation nisi which well antedated January 1, 1948. Nor is that sale to be inquired into any longer following the absolute confirmation thereof. See Sec. 607 of the Act of 1947, supra, which carried forward, without substantial change, the like provisions of the Act of 1931, supra. The appellants' contention in this particular lacks legal basis and the learned court below was, therefore, correct in concluding that the County Commissioners acquired the property here involved prior to January 1, 1948.

What the Commissioners turned over to the Tax Claim Bureau, in present regard, was delivered pursuant to Sec. 701 of the Act of 1947 and was the property acquired by them at the tax sale prior to the effective

date of the Act. According to the findings of the hearing judge, "The minute book of the Commissioners under date of December 31, 1948, shows a resolution to transfer to the Tax Claim Bureau the land (exempting some not pertinent) set forth in the petition and this resolution was made in pursuance of Art. 7, Sec. 701 of the Act of 1947, July 7, P.L. 1368." Having acquired the property prior to January 1, 1948, the County Commissioners were under a positive statutory duty (see Sec. 701) to deliver possession of such property to the Tax Claim Bureau prior to January 1, 1949. In that situation, it is vain for the appellants to search for some possible technical objection to the manner in which the Commissioners undertook to discharge their mandatory legal duty in the premises. The Act does not prescribe any formality by which the transfer was to be made. Indeed, it might well be considered to have occurred automatically because of the law's positive direction. There is, moreover, a "presumption that official acts or duties have been properly performed . . .": see *Fleming v. Adamson*, 321 Pa. 28, 37, 182 A. 518, and cases there cited. Cf. also *Vernon Township v. United Natural Gas Co.*, 256 Pa. 435, 439, 100 A. 1007; and *Beacom v. Robison*, 157 Pa. Superior Ct. 515, 521, 43 A. 2d 640. The appellants have shown nothing to rebut that presumption. And, it is more than difficult to rationalize a basis for their objection to the manner of the Commissioners' delivery of the property to the Tax Claim Bureau. The objection is such as might have been expected to come from possible purchasers of the property but not from taxing bodies that have been unable to show that the sale prices received for the property by the Bureau at private sale were not the highest and best prices obtainable and have since shared in the distribution of the proceeds to the full extent of their proportional interests therein.

The appellants' principal contention is clearly untenable. It confuses the sale provisions of Article VI of the Act with Article VII. The latter, as its stated caption indicates, has to do expressly with "Property Purchased by Taxing District Prior to this Act", i.e., prior to January 1, 1948. Property so purchased, which must have come into the hands of the Tax Claim Bureau, by the then terms of the Act, by January 1, 1949, if at all, may be sold by the Bureau at private sale under Sec. 702(h) with no more regard for the requirements of Article VI than that the Tax Claim Bureau *make deeds* for such property *when sold* (at private sale) "in the same manner as provided in Article VI." This reference in Sec. 702(h) to Article VI imposes no condition whatsoever with respect to a private *sale* under Article VII. The requirement in Article VI of a prior offer of property at public sale at an upset price before it can be offered for private sale relates only to properties acquired after January 1, 1948. There is no provision that a private sale under Sec. 702(h), as here, shall be preceded by an offer of the property at public sale at an upset price. Consequently, the sales in question were competently entered into and legally effectuated.

Finally, the appellants argue that, even though the Tax Claim Bureau was properly possessed of the property in question prior to January 1, 1949, and was authorized by the Act to make private sale thereof without a prior public sale at an upset price, it was error nonetheless for the Bureau to have offered these properties for sale in bulk lots rather than piecemeal. That administrative matter might have assumed importance had the highest and best prices obtainable for the properties not been received for them through the private sales actually made and approved. The learned court below searched the question of price thoroughly. At the time fixed for a hearing on the petitions, viz.,

August 2, 1949, the court postponed the hearing for thirty days to give the local taxing districts an opportunity to obtain a better bid. On the adjourned date the hearing was further postponed until October 17, 1949, and on that date it was again postponed until December 5, 1949. It is an established fact, as was found by the court below, that "On all of these dates and up to this date [of the order approving the sales] no better offer for the purchase of these lands has been made." And, counsel for the appellant taxing districts acknowledged at the hearings on the petitions that "they knew of no better bid on the lands." Nor was there any showing that the tracts would have brought a better aggregate price if sold piecemeal rather than in bulk. Plainly enough, there is not the slightest merit in this contention of the appellants.

Decree affirmed at appellants' costs.