Tremont Township School District, Appellant, *v.* Western Anthracite Coal Company.

Argued January 5, 1955. Before STERN, C. J., STEARNE, JONES, BELL, CHIDSEY and MUSMANNO, JJ.

*Charles L. Frank,* for appellant.

*Calvin J. Friedberg,* with him *John W. Walesky, Hicks, Williamson, Friedberg & Jones,* and *Watkins & Walesky,* for appellee.

*H. G. Stutzman,* with him *John H. Thomas,* for intervenor, appellee.

OPINION PER CURIAM, April 18, 1955:

The Tremont Township School District on June 20, 1949, obtained a judgment for delinquent taxes against the Western Anthracite Coal Company. The Coal Company owned 16,349 acres of land in the western part of Schuylkill County. This land was sold for unpaid taxes by the Treasurer to the County Commissioners of the County of Schuylkill in 1942 and 1944. The sale was confirmed in 1949 and the effect of this

confirmation was to place title to the land sold in the County of Schuylkill from the date of the sale in 1942 and 1944: *Tremont Township School District Appeal*, 366 Pa. 404, 77 A. 2d 403.

The School District issued an attachment execution on June 28, 1949, seeking to attach in the possession of the Lamar Coal Company all royalties collected by it on coal mined in the aforesaid land during the period April, 1949, to February, 1950, claiming that the royalties were due the Western Anthracite Coal Company. The Lamar Coal Company, garnishee, denied any moneys were due by Lamar to the Western and thereafter pleaded "nulla bona".

On March 9, 1953, the County of Schuylkill intervened, claiming that in the period (April, 1949-February, 1950) in which the School District claimed royalties were due Western, the coal removed and delivered or sold to the garnishee was from land owned by the County in which Western had no rights or interest.

The jury found a verdict in favor of the garnishee. Plaintiff filed a motion for a new trial and for judgment n.o.v., both of which were dismissed by the lower Court.

The judgment is affirmed on the following excerpts from the Opinion of Judge CURRAN speaking for the lower Court:

"It was established that on April 10, 1946, the Western Anthracite Coal Company redeemed by payment of taxes in full fourteen acres of coal in Porter Township, and fourteen acres of coal in Tremont Township. It was not proven, nor was there any offer to prove, that any of the coal delivered to the garnishee during the period: April, 1949 to February, 1950, was mined on any of these twenty-eight acres so redeemed by the Western Anthracite Coal Company.

. . .

"We shall consider plaintiff's reason No. 11 first: Intervention in a pending action is controlled by Pa. R. C. P. Nos. 2326 and 2350. R. C. P. Rule No. 2327 requires the Court to allow intervention 'at any time during the pendency of an action' . . . if . . . '(4) the determination of such action may affect any legally enforceable interest of such person, whether or not he may be bound by a judgment in the action.'

"Since 'legally enforceable interest' does not have a clear and exact definition the Court must necessarily exercise discretion in determining whether such an interest exists: 68 D. and C. 318 (1949), Anderson Civil Practice, Vol. 4, page 520, note 15.

"Clause 4 of Rule No. 2327 permits the intervention of a person possessing a legally enforceable interest which may be affected by the proceedings without regard to whether he would be technically bound by the judgment entered in the action . . .

"Does the County of Schuylkill have a legally enforceable interest, and would that interest be affected by determination of the action? The plaintiff here seeks to recover from the garnishee the royalties for coal that was mined from the lands owned by the County of Schuylkill during the years 1949 and 1950. Clearly, if any moneys are due for coal removed from the lands owned by the County of Schuylkill such moneys would be due the County of Schuylkill. And if it were established that the garnishee withheld royalties due for coal delivered to it from the lands owned by the County of Schuylkill during the years 1949 and 1950, certainly the interest of the County would be affected by a proceeding that might conceivably result in a payment of such moneys by the garnishee to someone other than the County. The County was the owner of these lands from which the coal was removed: *Tremont Township School District Appeal,* supra.

"Any moneys received by the County as a result of taxes paid or otherwise received for the disposition of the lands must be distributed proportionately to the taxing bodies in the districts in which the land is located: *Appeal of Andrews Land Corporation,* 149 Pa. Superior Ct. 212, 27 A. 2d 700.

"If the County of Schuylkill permitted moneys due for coal removed from the land owned by them to be diverted for the payment of another creditor their interest in the fund would be affected as well as the interest of the several municipalities who would also be entitled to a division of the funds after they came into possession of the County and for whom the County acts as trustee.

"In this respect it is distinguished from the cases relied upon by the plaintiff: *Andrews v. New Bethlehem Window Glass Co.,* 268 Pa. 565; *Farmers Mutual Ins. Co. v. New Holland Turnpike Co.,* 122 Pa. 37. In those cases the intervenors had no interest which would be affected by determination of the action.

. . .

"The plaintiff further complains that the County's intervention should have been rejected for the further reason that its claim was not in subordination to and in recognition of propriety of the action as provided by R. C. P. 2329.1.

"This objection is answered in the opinion of Justice STEARNE in the case of *Commonwealth v. Keystone Mutual Casualty Company,* 366 Pa. 149, 76 A. 2d 867: 'The objection which appears to be the most formidable is whether under Procedural Rule No. 2329 (1) this application "is not in subordination to and in recognition of the propriety of the action." The general rule is that an intervenor must take the suit "as he finds it".' Cases cited.

"This was a proceeding brought under the Act of June 13, 1836, 12 P.S. 2998.

"In an execution attachment, plaintiff is placed in the position and requires the right of his debtor, as regards the garnishee; and, after an answer filed and issue joined, the same presumptions of law arise on the trial from any particular evidence as if there had been no attachment, and the suit had been by the debtor against the garnishee: *Fessler v. Ellis,* 40 Pa. 248.

"Under Attachment Act June 13, 1836, supra, making it the duty of the jury, where the plea of the garnishee is nulla bona, to find what effects are in his hands, and the value thereof, the burden of proof is on plaintiff: *Caldwell v. Coates,* 78 Pa. 312; *Golder v. Bogash,* 198 A. 149, 329 Pa. 350; *Hollander v. Kressman,* 143 Pa. Superior Ct. 32, 17 A. 2d 669.

"Assuming that the testimony of the plaintiff's witness, Adams, was accepted by the jury it established that a fund in the amount of $12,894.00 had been placed in escrow in the Tremont National Bank in the name of the garnishee and the Miners, Truckmen and Breakers Independent Union, William Adams, Secretary. It further established that during the period, April 1949 to February, 1950, coal had been removed from lands owned by the County of Schuylkill and delivered to the Lamar Coal Company, garnishee. The plaintiff failed to show (1) ownership of the lands by the Western Anthracite Coal Company; (2) any lease or agreement which would authorize the Western Anthracite Coal Company to remove the coal during the period in question; and the plaintiff proved affirmatively that all of the land with the exception of two parcels consisting of twenty-eight acres was owned by the County of Schuylkill.

"It is the plaintiff's position that because they proved that coal was removed from lands formerly

owned by the Western Anthracite Coal Company during the period, April, 1949 to February, 1950, and delivered to the garnishee, that this had established an indebtedness on the part of the garnishee to the Western Anthracite Coal Company.

"With respect to the twenty-eight acres shown by the testimony to have been owned by the Western Anthracite Coal Company during the period in question the plaintiff neither proved nor offered to prove that any of the portion of the coal delivered to the garnishee was removed from the two parcels (twenty-eight acres) owned by the Western Anthracite Coal Company.

"In a proceeding in attachment the burden is on the plaintiff to show that the garnishee has assets in its hands liable to the attachment, and the plaintiff is bound to make out a case sufficient to recover in assumpsit: *Caldwell v. Coates*, supra. 'The burden of proof . . . cannot be made by conjectures . . . mere conjectures of cases do not supply this proof': *Wagner v. Somerset County Memorial Park*, 372 Pa. 339, 93 A. 2d 440, and cases there cited.

"We are of the opinion, therefore, that the Court properly charged the jury, that the burden of proof was upon the plaintiff to establish a debt due the defendant by the garnishee, and that proof of ownership of the lands by the County of Schuylkill could only establish that any moneys due for coal removed from such land would be due the owner of the land: *Zerbe Twp. School District v. Lark et al.*, 59 D. and C. 424; *Hunter v. McKlween*, 353 Pa. 357, 45 A. 2d 222.

"The Court properly rejected the plaintiff's offer of written agreements dated June 13, 1946, purporting to give the Western Anthracite Coal Company the right to mine on seventeen tracts of land upon the payment of a royalty to the County of Schuylkill. The proffered agreements, together with the testimony of the Chief

Clerk of the Tax Claim Bureau, demonstrated that the agreements were terminated March 1, 1948, prior to the time of the accrual of the alleged indebtedness on the part of the garnishee.

"The testimony with respect to the payments was not alone based upon the testimony of the Chief Clerk, but upon the records of the Tax Claim Bureau of Schuylkill County which the Chief Clerk had with him in the Court Room.

"The proffered testimony was clearly irrelevant for the purpose offered.

"The five tracts of land shown to have been redeemed under the Act of 1941 [P. L. 535, approved July 28, 1941, 72 PS §6105.1 et seq.], which redemption was concluded April 6, 1950, by West Schuylkill Land Company did not establish, or tend to establish any indebtedness on the part of the garnishee to the defendant.

"The tracts were redeemed April 6, 1950 by a corporation other than the defendant, and the redemption occurred after the time which the alleged indebtedness arose: April, 1949-February, 1950. Pending the redemption, the County of Schuylkill was the owner of the coal: *Zerbe Township School District v. West Line Coal Co.*, 59 D. and C. 505.

"The offer to present testimony of the former County Commissioner concerning the action of the County Commissioners was in conjunction with the offer to produce a resolution of the County Commissioners covering the proposed testimony. Counsel advised the Court that no resolution ever existed, and did not make any further offer to present the testimony of the County Commissioner without the records of his office. Such testimony, however, would have been incompetent; the testimony would have been in contradiction of the records of the office regarding the agreements of 1946

produced by the plaintiff and rejected by the Court for the purposes offered; . . .

"The plaintiff also moves for judgment n.o.v. On the basis of the testimony produced, the jury determined their verdict in favor of the garnishee. From the testimony it is clear that the testimony of the plaintiff, if believed by the jury, would tend to establish ownership of the land from which the coal was removed in the County of Schuylkill. Consequently, any debt that accrued would be due to the County of Schuylkill, the intervenor, in which event the verdict was properly rendered for the garnishee."