Commonwealth of Pennsylvania, acting by and through the Pennsylvania Game Commission, Appellant v. Lackawanna County Tax Claim Bureau and Rocky Glen Rod and Gun Club, now by succession known as Shiney Mountain Sportsmen Club, Appellees.

Argued October 9, 1980, before Judges MENCER, BLATT and CRAIG, sitting as a panel of three.

*William R. Pouss,* Assistant Attorney General, with him *Benjamin B. Solomon,* Assistant Attorney General, for appellant.

*Sidney Z. Levy,* for appellee, Lackawanna County Tax Claim Bureau.

*Albert E. Nicholls, Jr., Hughes, Nicholls & Moran,* for appellee, Rocky Glen Rod & Gun Club, predecessor of Shiney Mountain Sportsmen Club.

OPINION BY JUDGE CRAIG, December 4, 1980:

The Pennsylvania Game Commission (commission) appeals from a decision of the Court of Common Pleas of Lackawanna County, which dismissed the commission's petition to set aside a sale of real

estate made by the Tax Claim Bureau (bureau) of Lackawanna County at a private auction held under Section 702(h) of the Real Estate Tax Sale Law (Law), Act of July 7, 1947, P.L. 1368, *as amended,* 72 P.S. §5860.702(h).

The property involved in this dispute is a 454.6-acre tract of land located in Spring Brook Township, Lackawanna County, formerly assessed to John Mitchell, and acquired in 1940 by the Lackawanna County Commissioners through a treasurer's sale. In 1970 the Lackawanna County Real Estate Board leased the property to the Rocky Glen Rod and Gun Club.

Pursuant to Section 701 of the Law, 72 P.S. §5860.701, the county, in 1973, transferred the tract to the bureau. When the bureau, in September 1977, first solicited offers for a private sale of the tract, it had an upset price[1] of $5,605.53. Three parties, the commission, George Benjamin and Rocky Glen Rod and Gun Club, each submitted an offer which exceeded the tract's upset price.

The bureau, however, rejected the offers and notified the interested parties that it would conduct a private auction of the property on November 3, 1977. Despite its objections to such further proceedings,

---

[1] Section 605 of the Act, 72 P.S. §5860.605, defines upset price as 'the sum of (a) the tax liens of the Commonwealth, (b) the amount of the claim absolute and interest thereon on which the sale is being held, (c) the amount of any other tax claim or tax judgment due on such property and interest on the judgment to the date of sale, (d) the amount of all accrued taxes including taxes levied for the current year, whether or not returned, a record of which shall be furnished to the bureau by tax collectors, receivers of taxes and taxing districts, (e) the amount of the municipal claims against the property, and (f) the record costs and costs of sale, including pro rata costs of the publication of notice and costs of mail and posted notices in connection with the return of the claim and mail and posted notices of sale.'

the commission participated in the auction held on November 3, 1977.

The high bidder at the auction was Rocky Glen Rod and Gun Club with a bid of $126,000. Thereafter the property went to the Shiney Mountain Sportsmen Club, successor to the Rocky Glen Rod and Gun Club.

The issue here is one of first impression—whether the tax bureau has a duty to sell property at the highest initial offer, without resort to further efforts, when that highest initial offer exceeds the upset price.

A taxing district's only interest in proceeds from a conversion of property acquired by it for non-payment of taxes is the satisfaction in full of all tax claims against the property, including interest, penalties and cost. *Petition of County Commissioners of Fayette County,* 386 Pa. 382, 126 A.2d 737 (1956).

Because the taxing district's interest in the proceeds from the property was $5,605.53 and the commission's offer of $45,000 was the largest of the three original offers, the commission postulates that the bureau acted capriciously by subjecting the property to a private auction.

However, the Pennsylvania Supreme Court in *Tremont Township School District Appeal,* 366 Pa. 404, 77 A.2d 403 (1951), held that Section 702(h) of the Law permits the bureau to offer property by a private sale without first offering the property at a public sale for the upset price. Moreover, in *Tremont* the court indicated that the bureau has a duty to get the best and highest price for the property it sells. The court in *Tremont,* during its discussion of the bureau's decision to sell the property there involved in bulk lots rather than piecemeal, stated as follows:

> That administrative matter might have assumed importance had the highest and best

prices obtainable for the properties not been received for them through the private sales actually made and approved . . . '[N]o better offer for the purchase of these lands has been made. . . .' Nor was there any showing that the tracts would have brought a better aggregate price if sold piecemeal rather than in bulk. *supra* at 410-11, 77 A.2d at 406.

The commission here attempts to limit the "best and highest price" language of *Tremont* to instances where the upset price has not been bid. The commission has not supplied nor have we found any authority for so limiting the language of *Tremont*.

In *Breinig v. North Hills School District,* 19 Pa. Commonwealth Ct. 377, 382, 339 A.2d 617, 620 (1975), which held that a taxing district has no right to object to a private sale of tax delinquent property if the district's claims in the proceeds would be satisfied out of the proceeds of such a sale, the court cited *Tremont* for the proposition that a bureau is obligated to get the highest possible price for property sold by it.

Even if we were inclined to accept the commission's reading of *Tremont,* on the record before us, we could not hold that the bureau ever became obligated to sell the tract to the commission. The commission's original bid was conditioned upon the approval of the commission's board, and the record is devoid of any evidence that the board ever approved.

Accordingly, we affirm the decision of the court below.

### ORDER

AND Now, this 4th day of December, 1980, the January 30, 1979 order of the Lackawanna County Court of Common Pleas is affirmed.