# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Bethlehem Area School District,    :
              Appellant    :
                          :
           v.               :
                          :
The Board of Revenue Appeals    :
of Northampton County and    :   Nos. 298 & 357 C.D. 2019
Lehigh Crossing Associates, LP    :   Argued: December 10, 2019


BEFORE:   HONORABLE MICHAEL H. WOJCIK, Judge
                HONORABLE CHRISTINE FIZZANO CANNON, Judge
                HONORABLE ELLEN CEISLER, Judge


OPINION
BY JUDGE FIZZANO CANNON        FILED: January 16, 2020


Bethlehem Area School District (District) appeals from the orders of the Court of Common Pleas of Northampton County (trial court) dated February 14, 2019, that granted the motion for summary judgment filed by Lehigh Crossing Associates, LP (Taxpayer) and dismissed the District's tax assessment appeals.[1] The trial court concluded that the evidence of record showed that "no triable issue of fact exists" and the assessment appeals were "borne out of a systematic and intentional practice of selectively targeting commercial properties" in violation of the

---

[1] Though named as a party to this matter, the Board of Revenue Appeals of Northampton County (Board) was precluded from filing a brief and participating in oral argument because it failed to file a brief pursuant to an earlier order of this Court dated August 14, 2019. Cmwlth. Ct. Order dated 9/10/19. Likewise, the Board did not participate before the trial court though it was listed as a party.

Uniformity Clause of the Pennsylvania Constitution.[2]  Upon review, we conclude that the trial court erred as a matter of law, and therefore, we reverse the trial court and remand this matter for further proceedings consistent with this opinion.

This matter commenced on July 27, 2012 when the District appealed the tax assessments of two properties, Tax Parcel N7 2 1D-1 0204 and Tax Parcel N7 2 1D-1 0212 (collectively, Property), owned by the Taxpayer, seeking an increase in the assessments for the tax year commencing January 1, 2013.[3] Reproduced Record (R.R.) at 3a, 11a, & 18a.  The Property is located within the boundaries of the District, includes "a multi-unit apartment complex, and operates as one single economic unit."  *See* Trial Court Orders and Opinions dated 2/14/19 n.1; R.R. at 3a & 11a.  In 2012, the combined assessed value of the Property was $2,268,300, which correlates to a 2013 tax year implied market value of $6,048,800. R.R. at 18a.  After hearings on the matter, the Board of Revenue Appeals of Northampton County (Board) dismissed the appeal and stated that "[t]here will be no change in the assessment."  R.R. at 8a & 16a.

---

[2] The Uniformity Clause provides that "[a]ll taxes shall be uniform, upon the same class of subjects, within the territorial limits of the authority levying the tax, and shall be levied and collected under general laws."  Pa. Const. art. VIII, § 1.

[3] The District filed its appeals pursuant to Section 8855 of the Consolidated County Assessment Law, which provides as follows:

> A taxing district shall have the right to appeal any assessment within its jurisdiction in the same manner, subject to the same procedure and with like effect as if the appeal were taken by a taxable person with respect to the assessment, and, in addition, may take an appeal from any decision of the board or court of common pleas as though it had been a party to the proceedings before the board or court even though it was not a party in fact.  A taxing district authority may intervene in any appeal by a taxable person under section 8854 (relating to appeal to court) as a matter of right.

53 Pa.C.S. § 8855.

On December 7, 2012, the District appealed the Board's decision to the trial court. R.R. at 1a-16a. Before the trial court, the District argued that the Property assessment is "substantially lower than assessments of comparable properties in the taxing district" and is based on an "erroneous determination of the fair market value particularly as it concerns [the Taxpayer's] [P]roperty," in violation of constitutional and statutory law. *Id*. at 3a-4a & 11a-12a. The Taxpayer responded with motions to quash the appeals arguing that the District selectively appealed a "class of properties, commercial properties, to the exclusion of lower assessed residential properties" in violation of the Uniformity Clause of the Pennsylvania Constitution and as provided in *Valley Forge Towers Apartments N, LP v. Upper Merion Area School District*, 163 A.3d 962, 978 (Pa. 2017). *See* Taxpayer's Motion to Quash Bethlehem Area School District's Tax Assessment Appeal (Motion to Quash) ¶¶ 3-4.

The District answered the motion to quash and denied that it targeted commercial properties for appeal, explaining that the Supreme Court in *Valley Forge* refrained from holding that the use of a monetary threshold or "some other selection criteria would violate uniformity if it were [sic] implemented without regard to the type of property in question or the residency status of its owner." *See* Answer to Taxpayer's Motion to Quash ¶ 3. The District, relying on *Valley Forge*, alleged that it retained an outside consultant to review "<u>all</u> properties in the [D]istrict and identify those that met the District's [monetary] threshold and are [under assessed] by an amount sufficient to justify the cost of litigation." *Id*. ¶ 7 (emphasis in original). The District alleged that "[b]ased on recommendation of counsel, it was believed that the average tax assessment appeal taken through trial would cost $10,000. Therefore, the direction given to counsel was to identify properties where there was

3

a reasonable expectation of generating at least $10,000 in potential tax increase"
($10,000 threshold). *See* Memorandum of Law in Opposition to Taxpayer's Motion
to Quash at 5. By order dated November 20, 2017, the trial court denied the
Taxpayer's motion to quash. Trial Court's Order dated 11/20/17 n.1 & R.R. at 42a-
43a. The trial court noted in its order that

> [a]t this stage in the litigation, without the benefit of
> discovery, we cannot conclude that the monetary threshold
> set by [the District] was merely a proxy for the sub-
> classification of commercial properties. Our ruling is
> without prejudice to [the Board and the Taxpayer] such
> that [the Board and the Taxpayer] may move for summary
> judgment after the parties have completed discovery.

*Id.* The parties completed discovery, and, thereafter, the Taxpayer filed a motion for
summary judgment with the trial court, which the District contested. In their filings
with the trial court, the parties relied on the following facts.

On February 27, 2012, the District, through the Bethlehem Area School
Board (School Board), voted to retain a consulting firm, Keystone Realty Advisors,
LLC (Keystone), to assist with identifying properties for the District to consider
bringing assessment appeals. R.R. at 23a-33a. The minutes of the February 27,
2012 School Board meeting provided as follows:

> During the past few weeks, the administration discussed
> with the [School] Board the concept of the District taking
> a proactive approach to real estate assessments whereby
> the District can identify under assessed properties to be
> evaluated for their fair market value rather than simply
> allowing the taxpayer to file reduction appeals. Several
> school districts are currently doing exactly this in
> identifying [under assessed] properties, which meet a
> predetermined threshold to conduct a reverse appeal
> presented by the school district rather than the property

4

owner. This process serves to identify and *correct valuation inequities* among comparable properties and *addresses the proper share of taxation between commercial and residential owners*. When commercial parcels are undervalued because of corporate expertise and resources in filing assessment reduction appeals, the residential property owner ultimately subsidizes that reduction in revenue.

R.R. at 25a (emphasis added). A copy of the agreement between the District and Keystone was attached to the February 27, 2012 meeting minutes. *Id*. at 27a-32a. The agreement provides that Keystone would receive a contingency fee of 30% of any increased tax revenue that the School District generates through a Keystone assisted assessment appeal. *Id*. at 29a. The agreement further states that

[Keystone] agrees to provide an ongoing review of the property tax assessment of real estate parcels located in the client's geographic area *comprising a variety of property types* to be determined at the direction of [the District] with the intent of identifying properties which may warrant review by [the District] and its attorney for consideration of a [District] initiated tax appeal ("reverse appeal").

*Id*. at 27a (emphasis added). Based on the agreement, Keystone identifies the properties in the District to consider for assessment appeals and reviews them with the District's solicitor. *Id*. at 129a. The solicitor then meets with the District's Administration, namely the Chief Financial Officer (CFO) and Superintendent, which recommends approval to appeal the assessments to the School Board. *Id*. The School Board approves the Administration's recommendation. *Id*. After Keystone was retained, Keystone identified 27 commercial properties for appeal, and on July 23, 2012, the School Board approved assessment appeals on all 27 commercial properties. *Id*. at 39a. The next day, an article was published on the Lehigh Valley

5

Live website summarizing the July 23, 2012 School Board meeting and indicated that the School Board hired Keystone "to identify *commercial and industrial properties* that are [under assessed] so the [D]istrict can file an appeal to raise their taxable value." *Id*. at 40a (emphasis added). A few days later, the District initiated assessment appeals for the 2013 year, just ahead of the August 1, 2012 filing deadline, including the appeals of the Property at issue. *Id*. at 75a.

Based on the aforementioned facts, the Taxpayer argued to the trial court that summary judgment was appropriate because the facts show that the District targeted only commercial properties for assessment appeals. R.R. at 74a-77a. The Taxpayer relied on the February 27, 2012 School Board meeting minutes stating that "[t]his process serves to identify and *correct valuation inequities* among comparable properties and *addresses the proper share of taxation between commercial and residential owners*." *Id*. at 25a & 74a-75a. Further, the Taxpayer asserted that the District did not file any appeals on residential properties in 2012 nor in any year thereafter. *Id*. at 63a-65a & 77a. Though the District argues that it was not targeting commercial properties but relying on a $10,000 threshold, the Taxpayer explained that the agreement with Keystone did not contain any language referencing a $10,000 threshold and there was nothing in writing evidencing such a policy. *Id*. at 57a, 63a & 76a-77a. Therefore, the Taxpayer argued:

> The . . . District produced nothing in discovery to demonstrate that the policy claimed by counsel had been followed with respect to residential properties.
> Furthermore, nothing was produced demonstrating how and why certain properties were chosen for appeal. No documents were produced setting forth Keystone's analysis of the properties chosen to be appealed, nor any documents setting forth the list of recommendations from Keystone. Nor was there any documentation as to how the

6

residential properties were reviewed to determine if the $10,000 policy would apply to them. . . . All the . . . District has confirmed is that (1) Keystone recommended appeals on commercial properties, (2) appeals were filed on each commercial property by the . . . District, (3) no appeals were filed on residential properties, and (4) [t]he . . . District has failed to produce any evidence or documentation to support the . . . District's claim that residential properties were ever considered for appeal.

*Id.* at 77a.

The District responded that the motion for summary judgment should be denied because the record supports its assertion that it utilized the $10,000 threshold without regard to property type. R.R. at 91a. In support, the District relied on an affidavit executed by the District's CFO, Stacy M. Gober, who represented that the District developed the $10,000 threshold in consultation with its solicitor so as to account for the potential costs of litigating the appeals. *Id.* at 130a & 216a. The CFO expressly stated that the $10,000 threshold was "not developed based on a [sic] sub-classifications of properties based on property type," and the threshold is implemented without regard to property type. *Id.* The CFO further stated that "no appeals on residential properties have been filed to date because no residential properties have met the District's [$10,000] [t]hreshold." *Id.*

The District also cited the deposition testimony of the Superintendent who testified that since the inception of the appeals program, the District has not imposed any limitations on Keystone as to its process of identifying under-assessed properties. R.R. at 137a, 140a & 216a-17a. The Superintendent indicated that the District relies upon the expertise of its consultants to carry out the identification process within the parameters of the $10,000 threshold. *Id.* Although the $10,000 threshold has not been reduced to a formal written policy, the Superintendent indicated that the $10,000 threshold was discussed prior to executing the agreement

with Keystone and since the implementation of the appeals policy. *Id*. at 137a & 228a. The Superintendent confirmed that residential property owners have never been advised that they were excluded from a District-initiated appeal and that it is not feasible for the District to appeal every single under-assessed property in the District. *Id*. at 135a & 141a. The District argued that, despite the Taxpayer's representation that the District selectively appealed only commercial properties in 2012:

> all that is clear from the record is that the District filed appeals only on commercial properties. This is a fact not in dispute and does not implicate a violation of the Uniformity Clause. The record further suggests that these appeals were not "selective" but rather all property types were considered and that appeals were not filed on residential properties because no residential properties met the District's threshold.

*Id*. at 224a.

After considering the parties' arguments, the trial court granted the Taxpayer's motion for summary judgment and dismissed the District's appeal. *See* Trial Court Orders and Opinions dated 2/14/19. In dismissing the appeal, the trial court relied on *Valley Forge* and concluded that the Taxpayer "demonstrated that no triable issue of fact exists as to whether the instant tax assessment appeal was borne out of a systematic and intentional practice of selectively targeting commercial properties for [District]-initiated appeals, in violation of the Uniformity Clause of the Pennsylvania Constitution." *Id*. at 9. In so concluding, the trial court explained that the February 27, 2012 minutes from the School Board meeting included a recommendation to "**identify and correct valuation inequities among comparable properties and <u>address the proper share of taxation between commercial and residential owners</u>.**" *Id*. at 6 (emphasis in original). Further, since

8

the inception of the appeals program, not a "single residential property has been selected for tax assessment appeal, because none have satisfied the $10,000 [t]hreshold." *Id*. Additionally, minutes from the July 23, 2012 School Board meeting indicate that 27 properties had been approved for tax appeal, all income-producing, non-residential properties. *Id*. Based on these facts, the trial court reasoned:

> While it is true that the mere fact that only commercial properties were appealed since 2012 does not necessarily indicate a Uniformity Clause violation, here, there is enough additional evidence to support the conclusion that it was not a mere coincidence. The evidence adduced in discovery clearly evinces that from the inception of the agreement with Keystone, the . . . District (a) distinguished between commercial and residential property owners and juxtaposed one class of tax payers [sic] against another, and (b) actively sought to impose an increased tax burden on one class in order to rectify perceived "valuation inequities among comparable properties."

*Id*. at 7 (emphasis added). The District brought this appeal.[4]

Before this Court, the District contends that the trial court erred when it granted summary judgment and dismissed the appeal because it failed to adhere to the standard of review in summary judgment proceedings, "which is not to determine facts, but only to determine if genuine issues of material fact exist." District's Brief at 11. The District asserts that the trial court erred because it failed to "take all facts of record and reasonable inferences therefrom in the light most favorable to the non-moving party [that is, the District]." *Id*. The District contends that the trial court "made credibility determinations and completely disregarded the deposition

---

[4] By order dated May 20, 2019, this Court consolidated the cases *sua sponte*. Cmwlth. Ct. Order dated 5/20/19.

testimony of [the Superintendent]," as well as the CFO's sworn affidavit.  *Id.*  The District asserts that the trial court, instead, accepted "as controlling an unauthenticated, out of context document submittal [sic] from a School Board meeting.  This summary, when taken out of context, is ambiguous and unclear at best and cannot form the basis for the [trial court's] finding that no triable issue of fact exists."  *Id.*  The Taxpayer counters that the facts of record supported the trial court's determination.  Taxpayer's Brief at 8.  Specifically, the Taxpayer argues:

> assessment appeals were filed by the District in 2012 on 27 properties, all of which were commercial properties. No appeals were filed on residential properties, and in fact no such appeals have been filed at any time since 2012. Furthermore, the District failed to produce any evidence whatsoever which would show that residential properties were considered for an appeal or how such a review transpired.  The District merely asserts without any support that there was a monetary threshold of $10,000 of additional school district real estate tax.  At no time has the District demonstrated that the alleged monetary threshold was followed by Keystone in analyzing or recommending appeals.

*Id.*  The Taxpayer asserts that the "evidence presented led to only one clear conclusion, that the District's reverse assessment appeals were in violation of the Uniformity Clause of the Pennsylvania Constitution."  *Id.*

An appellate court may reverse a grant of summary judgment if there has been an error of law or an abuse of discretion.  *Nicolaou v. Martin*, 195 A.3d 880, 892 (Pa. 2018).  Summary judgment is proper only where there is no genuine issue concerning any material fact and the moving party is entitled to judgment as a matter of law.  *See Bailets v. Pa. Tpk. Comm'n*, 123 A.3d 300, 304 (Pa. 2015); *see also* Pa.R.C.P. No. 1035.2(2) (providing that summary judgment is proper if after

the completion of discovery, the "adverse party who [sic] will bear the burden of proof at trial has failed to produce evidence of facts essential to the cause of action or defense which in a jury trial would require the issues to be submitted to a jury"). If the claim is whether there are genuine issues of material fact, this is a question of law, and "our standard of review is *de novo* and our scope of review is plenary." *Nicolaou*, 195 A.3d at 892. In considering a motion for summary judgment, the record must be viewed in the light most favorable to the non-moving party, and all doubts as to whether a genuine issue of material fact exists are resolved against the moving party. *Nicolaou*, 195 A.3d at 891; *Bailets*, 123 A.3d at 304.

To ascertain a violation of uniformity, the burden is on the taxpayer to produce evidence to show that the government engaged in conduct constitutionally prohibited because it is well-settled law that acts of a governmental entity are presumed constitutional. *See Fisher Controls Co. v. Commonwealth*, 381 A.2d 1253, 1256-57 (Pa. 1977); *see also Petition of Tax Claim Bureau*, 77 A.2d 403, 406 (Pa. 1951). Section 8855 of the Consolidated County Assessment Law grants a taxing district "the right to appeal any assessment within its jurisdiction in the same manner, subject to the same procedure and with like effect as if the appeal were taken by a taxable person with respect to the assessment." 53 Pa.C.S. § 8855. Section 8855 does not prohibit a taxing district, or a taxpayer, from appealing an assessment and there are not restrictions as to the methodology employed by a school district, or taxpayer, to determine whether to appeal. *In re Springfield Sch. Dist.*, 101 A.3d 835, 847 (Pa. Cmwlth. 2014). But, a taxing district must exercise its discretionary power to bring assessment appeals within constitutional boundaries. *Valley Forge*, 163 A.3d at 980. Because all property in a taxing district is a single class, a taxing district may violate the constitutional boundaries of the Uniformity Clause if it has

11

a policy to appeal only assessments of one sub-classification of properties, where that sub-classification is drawn according to property type. *Id*. at 978.

In *Springfield*, this Court explained that a school district's use of a statutory appeal mechanism available uniformly to all interested parties does not amount to deliberate, purposeful discrimination. *Springfield*, 101 A.3d at 848 (citing *Vees v. Carbon Cty. Bd. of Assessment Appeals*, 867 A.2d 742 (Pa. Cmwlth. 2005)). This Court explained that a school district could decide to appeal assessments on certain properties if it anticipates a sufficient increased revenue that would result to justify the costs of appeals and "[j]udicious use of resources to legally increase revenue is a legitimate governmental purpose." *Id*. (citing *Weissenberger v. Chester Cty. Bd. of Assessment Appeals*, 62 A.3d 501, 506 (Pa. Cmwlth.), *appeal denied*, 76 A.3d 540 (Pa. 2013)). A school district, therefore, could adopt a methodology to narrow "the class of properties evaluated for appeal based upon considerations such as financial and economic thresholds or by classifications of property[,]" and these methodologies do not, as a matter of law, demonstrate deliberate, purposeful discrimination in violation of the Uniformity Clause. *Id*. at 848 (citing *Weissenberger*, 62 A.3d at 509). Relying on this reasoning, this Court in *Springfield* held that the methodology adopted by the school district to select properties for assessment appeals based on a monetary threshold of $500,000 is "not arbitrary, capricious or discriminatory" and "[t]he fact that the $500,000 threshold would mostly subject commercial properties to assessment appeals does not warrant a different conclusion." *Springfield*, 101 A.3d at 849.

Subsequently, in *Valley Forge*, the Supreme Court considered whether a school district's policy of targeting commercial properties for appeal, while refusing to appeal assessments on residences for political reasons, violates the

Uniformity Clause. *Valley Forge*, 163 A.3d at 966. In considering whether the taxpayers alleged sufficient facts in their complaint to support a claim, the Supreme Court held

> a taxing authority is not permitted to implement a program of only appealing the assessment of one sub-classification of properties, where that sub-classification is drawn according to property type – that is, its use as a commercial, apartment complex, single-family residential, industrial or the like.

*Id*. at 978. The Supreme Court, in so holding, explained that real property is the classification, and therefore, "all real estate in a taxing district is constitutionally entitled to uniform treatment." *Valley Forge*, 163 A.3d at 977 (citing *Clifton v. Allegheny County*, 969 A.2d 1197, 1212 (Pa. 2009)). The Supreme Court further explained that "'all property must be taxed uniformly, with the same ratio of assessed value to actual value applied throughout the taxing jurisdiction.'" *Id.* (quoting *Clifton*, 969 A.2d at 1224). Though the Supreme Court disagreed with this Court's statement in *Springfield* that a school district could evaluate properties for appeal based on classifications without running afoul of uniformity,[5] the Supreme Court expressly cautioned:

---

[5] The Supreme Court in *Valley Forge* further noted:

> Our disapproval of *Springfield's* interpretation of this Court's precedent should not be equated to disagreement with the result reached. In *Springfield*, the property owners challenged a school district's policy of using a monetary threshold to decide which properties to appeal. . . . They did not allege a scheme involving disparate treatment of property sub-classifications drawn according to property type or the status of its owner as a resident or non-resident of the taxing district.

*Valley Forge*, 163 A.3d at 975, n.13 (citation omitted).

Following *Valley Forge*, this Court in recent unpublished decisions has indicated that all *Valley Forge* requires is that the "other selection criteria" used by a taxing authority, whether a

13

> [N]othing in this opinion should be construed as suggesting that the use of a monetary threshold—such as the one challenged in *Springfield*—or some other selection criteria would violate uniformity *if it were [sic] implemented without regard to the type of property in question* or the residency status of its owner.

*Valley Forge*, 163 A.3d at 979 (emphasis added) (note omitted). We observe that the Supreme Court in *Valley Forge* had to accept all the facts alleged by the taxpayers in their complaint in a light most favorable to the taxpayers given the procedural posture of the case. *Id*. at 965.

But here, unlike the procedural posture of *Valley Forge*, the trial court was required to view the record in the light most favorable to the District. *See* Pa.R.C.P. No. 1035.2(2). Viewing the record in a light most favorable to the District, the District submitted evidence that, if found credible, demonstrates that it implemented the $10,000 threshold without regard to the type of property in question. In her affidavit, the CFO indicated that the $10,000 threshold was developed "to account for the potential costs of litigation." R.R. at 130a. The CFO expressly stated that the $10,000 threshold was "*implemented without regard to property type*" and that no residential properties had been appealed because they

---

monetary threshold or other methodology, be "implemented without regard to the type of property in question or the residency status of its owner." *See Punxsutawney Area Sch. Dist. v. Broadwing Timber, LLC* (Pa. Cmwlth., No. 1209 C.D. 2018, filed Oct. 29, 2019), slip op. at 18 (holding that the school district does not have to have a formal written policy regarding its monetary threshold); *see also East Stroudsburg Area Sch. Dist. v. Meadow Lake Plaza, LLC* (Pa. Cmwlth., No. 371 C.D. 2018, filed Oct. 17, 2019), slip op. at 10-11 (explaining that the Supreme Court in *Valley Forge* "took pains" to observe that "nothing in [the *Valley Forge*] opinion should be construed as suggesting that the use of a monetary threshold—such as the one challenged in *Springfield*—or some other selection criteria would violate uniformity if it were [sic] implemented without regard to the type of property in question or the residency status of its owner"). *See* 210 Pa. Code § 69.414(a) (explaining that an unreported opinion of this Court may be cited and relied upon when relevant for its persuasive value but not as binding precedent).

have not met the $10,000 threshold. *Id*. (emphasis added). The agreement provided that Keystone would review properties "located in the [District's] geographic area comprising a *variety of property types*." R.R. at 27a (emphasis added). The Superintendent testified that the District relies upon Keystone to identify properties that meet the $10,000 threshold and that it is not feasible to appeal every single under-assessed property in the District. R.R. at 135a & 141a. The Superintendent further testified that residential property owners have never been advised that they were excluded from a District-initiated appeal. *Id*. Reviewing this evidence in a light most favorable to the District, the trial court or a jury could ultimately conclude that the $10,000 threshold is implemented without regard to property sub-classification as permitted by *Springfield* and *Valley Forge*.

The trial court here, however, reached a contrary conclusion. In so concluding, the trial court stated that the evidence

> adduced in discovery clearly evinces that from the inception of the agreement with Keystone, the . . . District (a) distinguished between commercial and residential property owners and juxtaposed one class of tax payers [sic] against another, and (b) actively sought to impose an increased tax burden on one class in order to rectify perceived "valuation inequities among comparable properties."

Trial Court Orders and Opinions at 7. But, to reach this conclusion, the trial court had to disregard the evidence presented by the District and find as credible the evidence presented by the Taxpayer. Upon review of the trial court's opinions, it appears that the trial court relied on the February 27, 2012 School Board meeting minutes. *Id*. at 7. But, as asserted by the District, "the statements contained in this

15

document are ambiguous and their meaning is open to interpretation such that reasonable minds can differ." District's Brief at 24. The District explains:

> The statements reflect, at most, a paraphrasing of the state of affairs in the District at the time the District retained Keystone to pursue District-initiated assessment appeals in 2012. The meaning and intent behind these statements are subject to interpretation that only a finder of fact, considering the credibility of the declarant, is permitted to make and only outside the context of a motion for summary judgment. It is even unclear from the record who prepared the statement, what the intended purpose of the document is, or what the context was in which the statement was provided.

*Id*. at 24-25. In further support of its assertion, the District relied upon other evidence in the record that allows for a different interpretation of the School Board meeting minutes. *Id*. at 25-27.

The District cites the Superintendent's testimony where he stated that he did not make any statements at the February 27, 2012 School Board meeting as to whether commercial properties would be targeted for appeals. District's Brief at 26 & R.R. at 135a. Further, the District asserts that the Superintendent explained that, when giving his report at the July 23, 2012 School Board meeting,[6] he focused on commercial property owners because

---

[6] The July 23, 2012 minutes indicate that the Superintendent reported as follows:

> Everyone agrees that the property tax is the most dominant source of funds for schools and contains many inequities. Most commonly it is heard the value of someone's home doesn't necessarily match their income or their ability to pay their property tax particularly for retired citizens. Property tax inequities are reduced when properties of residential and commercial properties are properly assessed. Due to long periods without countywide reassessments, inequities grow. Additionally, large, often commercial property owners with legal and financial resources to file assessment appeals are successful in

16

[w]e certainly have residential property owner-initiated appeals. The dollar value that we lose in revenue is less than commercial. However, I did also mention that there are well-resourced property owners, referencing that there are residential property owners that [are] also of means that file reassessments.

District's Brief at 26-27 & R.R. at 139a & 159a. When asked at his deposition what he meant by "significant properties," the Superintendent responded, "That is referring to the $10,000 threshold that if . . . there's a potential for your tax bill to go up – increase by [$]10,000 . . . then there's some substantial value there." District's Brief at 27 & R.R. at 139a & 159a. Accepting this evidence in a light most favorable to the District, the District asserts these statements show that it "did not draw any distinctions between commercial and residential property owners in the establishment and/or implementation of the District-initiated appeals program." District's Brief at 26.

---

reducing their property taxes, and a combination of the lack of countywide reassessments, along with certain well resourced property owners gaining lower property taxes enhances inequities. In the end, the [D]istrict faces reduced property tax revenue as a result of the appeals and all the property owners pick up the burden when some properties are not accurately assessed. I am encouraging the Board's approval of this agenda item tonight. Citizens in the [D]istrict feel confident that all property owners should pay their fair share. The [School] Board in February approved a process to identify significant properties that are believed to be [under-assessed], and they are not paying their fair share. The agenda item tonight authorizes the [D]istrict solicitor to initiate the municipal appeal often referred to as reverse appeals process. The properties affected are listed on the agenda. We believe the resolution of the appeals could result in $1,500,000 to $2,000,000 of additional property tax revenue . . . .

R.R. at 35a & 159a.

17

We agree with the District that the statements in the meeting minutes and as evidenced by the Superintendent's testimony are subject to varying interpretations and therefore, reasonable minds could differ as to their meaning. *See Basile v. H & R Block, Inc.*, 761 A.2d 1115, 1118 (Pa. 2000) (providing that "[w]hen the facts are so clear that reasonable minds cannot differ, a trial court may properly enter summary judgment"); *see also Wheeler v. Johns-Manville Corp.*, 493 A.2d 120, 123 (Pa. Super. 1985) (explaining that on a summary judgment motion the court's function is not to try disputed issues of fact but simply to determine whether any genuine issues of material fact exist). Because reasonable minds could differ regarding whether the District established and implemented an appeals policy designed to target commercial properties, the trial court should have concluded that genuine issues of material fact exist. *LEM 2Q, LLC v. Guar. Nat'l Title Co.*, 144 A.3d 174, 178 (Pa. Super. 2016) (explaining that if the record contains evidence that "would allow a fact-finder to render a verdict in favor of the non-moving party, then summary judgment should be denied"). The trial court, therefore, erred as a matter of law when it granted the motion for summary judgment and dismissed this matter.[7]

For these reasons, we reverse the trial court's orders dismissing this matter and remand to the trial court for further proceedings consistent with this opinion.

_____
CHRISTINE FIZZANO CANNON, Judge

---

[7] Due to our disposition, we need not reach the District's argument that the trial court additionally erred in its application of the burden of proof in a uniformity challenge.

18

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Bethlehem Area School District,       :
                    Appellant         :
                                      :
             v.                       :
                                      :
The Board of Revenue Appeals          :
of Northampton County and             :    Nos. 298 & 357 C.D. 2019
Lehigh Crossing Associates, LP        :

# O R D E R

AND NOW, this 16th day of January, 2020, the February 14, 2019 orders of the Court of Common Pleas of Northampton County (trial court) granting Lehigh Crossing Associates, LP's motion for summary judgment and dismissing the Bethlehem Area School District's appeals are REVERSED. This matter is REMANDED to the trial court for proceedings consistent with this opinion.

Jurisdiction relinquished.

_____
CHRISTINE FIZZANO CANNON, Judge